**BRIAN J. FOLEY, Attorney at Law**

BY:  **BRIAN J. FOLEY, ESQ.** (PA ID No. 68806)

6701 Germantown Avenue, Suite 200

Philadelphia, PA  19119

(267) 930-4425 v

(267) 930-4427 f

Brian@BrianJFoleyLaw.com

*Attorney for Plaintiffs*

_____

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| **Divine Equality Righteous, Angelina Lee, Nyoka E. Jones, Tameeka Holland, Arkeem Dunson, & Sophia Yazujian** | : | |
| | : | |
| Plaintiffs | : | |
| | : | CIVIL ACTION NO.  23-cv-846 |
| | : | |
| v. | : | |
| | : | |
| **OVERBROOK SCHOOL FOR THE BLIND** | : | |
| | : | |
| | : | |
| | : | |
| Defendant | : | |

_____

### SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs, Divine Equality Righteous, Angelina Lee, Nyoka E. Jones, Tameeka Holland,

Arkeem Dunson, and Sophia Yazujian , by and through their attorney, as and for this

Amended Complaint against Defendant, Overbrook School for the Blind, state as follows:

## PRELIMINARY STATEMENT

1.      Defendant, Overbrook School for the Blind ("OSB"), summarily fired the

Plaintiffs after illegally denying their requests for religious exemptions to OSB's Covid-19

vaccination requirement. OSB acknowledged that Plaintiffs' religious beliefs were sincerely

held but denied their requests based on OSB's claim that vaccination was necessary to protect

OSB's staff and students, which OSB knew was false based on statements by, *inter alia*, the

CDC and FDA that the vaccines failed to prevent or reduce transmission. And, a few weeks

after firing Plaintiffs, OSB experienced a Covid-19 outbreak among its "fully vaccinated"

workforce -- and went remote.

2.      OSB exploited the pandemic to discriminate against employees based on, *inter*

*alia*, religion and race. Plaintiffs Righteous, Lee, Jones, Holland, Dunson, and Sophia Yazujian

were the ***only*** employees OSB fired. Five of these six employees are Black. OSB further

discriminated against the five Black Plaintiffs by frustrating their efforts to obtain

unemployment compensation and by depriving them of earned bonuses. In contrast, OSB

helped the white Plaintiff obtain unemployment compensation and paid her at least part of her

bonus.  Plaintiffs seek justice for OSB's illegal discrimination.

## PARTIES

3.      Plaintiff **Divine Equality Righteous** is an adult Black female resident of

Philadelphia, Pennsylvania.

4.      Plaintiff **Angelina Lee** is an adult Black female resident of Philadelphia, Pennsylvania.

5.      Plaintiff **Nyoka E. Jones** is an adult Black female resident of Eddystone, Pennsylvania.

6.      Plaintiff **Tameeka Holland** is an adult Black female resident of Ridley Park, Pennsylvania.

7.      Plaintiff **Arkeem Dunson** is an adult Black male resident of Philadelphia, Pennsylvania.

8.      Plaintiff **Sophia Yazujian** is an adult white female resident of Philadelphia, Pennsylvania.

9.      Defendant, **Overbrook School for the Blind** ("OSB"), is a private school for the blind at 6333 Malvern Avenue, Philadelphia, Pennsylvania.  It is a nonprofit organization exempt from income tax. OSB has more than 220 employees.

10.      There are two schools for the blind in Pennsylvania, OSB and Western Pennsylvania School for Blind Children (WPSBC). Unlike OSB, WPSBC did not impose a vaccine mandate on its employees.

11.      At all relevant times, Defendant OSB acted by and through its agents, servants, and employees, each of whom, at all times relevant, acted within the scope of their job duties.

**JURISDICTION**

12.      This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 as it

involves federal questions pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e *et seq*. ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"); the Americans with Disabilities

Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), and the Genetic Nondiscrimination Act, 42 U.S.C. §

2000ff-1(a) ("GINA").  This Court has supplemental jurisdiction over Plaintiffs' state law

claims for discrimination and retaliation based on race, religion, and disability under 28 U.S.C.

§ 1367.

**VENUE**

13.      Venue is proper in this Court under 28 U.S.C. § 1391(b) on two independent

bases: Defendant OSB is in this judicial district; and the acts and omissions that gave rise to all

of Plaintiffs' claims occurred in this judicial district.

**FACTS**

*Background: FDA, CNN,* **New York Times***: The Covid-19 Vaccines Don't Prevent Transmission*

14.      On December 11, 2020, the FDA granted Emergency Use Authorization ("EUA")

for the Pfizer-Bio-N-Tech COVID-19 vaccine. The FDA stated prominently, including in

reader-friendly FAQs on its website, that there was no evidence that this vaccine prevented

transmission of the SARS-CoV-2 virus from individuals infected despite vaccination. This

statement remains unchanged on the FDA website: https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19 (last accessed May 9, 2023). The FDA likewise included this same language regarding its December 18, 2020 EUA for Moderna's vaccine and its February 27, 2021 EUA for Johnson & Johnson's Janssen ("J&J") vaccine.

15.     In Summer 2021, US officials and media including *The New York Times*, CNN, *The Philadelphia Inquirer*, PBS, and NPR all reported that the Covid-19 shots did not prevent transmission of the virus that causes Covid-19 from individuals who, despite being "fully vaccinated," had become infected with the virus.

16.     For example, in June 2021, the *New York Times* reported that such infections had been occurring before April 30, 2021, and that the CDC had stopped recording such infections if there were no severe symptoms. *See* Johnny Diaz, *You're Vaccinated for Covid-19, and You Just Tested Positive. Now What?* NY Times, June 23, 2021, UPDATED July 19, 2021, https://www.nytimes.com/2021/06/23/us/can-i-get-covid-after-the-vaccine.html (last accessed May 9, 2023)

17.     For example, on August 6, 2021, CNN announced that the head of the CDC, Rochelle Walensky, MD, admitted that these vaccines did not prevent transmission.  *See* Madeline Holcombe, et al., *Fully vaccinated people who get a Covid-19 breakthrough infection can transmit the virus, CDC chief says,* CNN.COM, August 6, 2021 https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html (emphasis

added) (last accessed May 9, 2023).

18.      For example, on August 21, 2021, the FDA announced that it had granted full

approval to Pfizer's vaccine, which had been known as the Pfizer-BioNTech vaccine, which

was now called Comirnaty.  The FDA stated prominently, including in reader-friendly FAQs

on its website, that "the scientific community does **not** yet know if Comirnaty will reduce such

transmission" of the SARS-CoV-2 virus from individuals infected despite vaccination. This

statement remains unchanged on the FDA website: https://www.fda.gov/vaccines-blood-

biologics/qa-comirnaty-covid-19-vaccine-mrna (last accessed May 9, 2023) (emphasis added).[1]


***Background: Everybody Knew: Black People Are the Most "Vaccine Hesitant" Americans***

19.      It was widely reported in U.S. media that vaccine mandates have a

disproportionate impact based on race, and that Black people were the most "vaccine hesitant"

Americans. *See, e.g.,* *'You Can't Treat If You Can't Empathize': Black Doctors Tackle Vaccine*

*Hesitancy*, NPR.ORG, January 19, 2021 https://www.npr.org/sections/health-

shots/2021/01/19/956015308/you-cant-treat-if-you-cant-empathize-black-doctors-tackle-

vaccine-hesitancy (last accessed May 9, 2023). *See also Progressive Hypocrisy, White Supremacy:*

*How the Pandemic Revealed Progressive Pharisaism,* MODERN HERETIC, August 13, 2021

*https://modernheretic.com/progressive-hypocrisy-white-supremacy-how-the-pandemic-revealed-*

---

[1] The FDA subsequently used the same language regarding the January 31, 2022 approval for Moderna's Covid-19 vaccine, SpikeVax: https://www.fda.gov/vaccines-blood-biologics/qa-spikevax-covid-19-vaccine-mrna (last accessed April 25, 2023).

*progressive* (last accessed May 9, 2023).

***After the First Few Months of the Covid-19 Pandemic and Before Covid-19 Vaccines Were Available, OSB Operated In-Person***

20.     Like many institutions in Spring 2020, OSB operated remotely in response to the Covid-19 pandemic.

21.     For most of the subsequent school year, 2020-2021, and into Fall 2021, OSB was open for in-person teaching and learning.

22.     During the 2020-2021 school year, before and after the Covid-19 vaccines were widely available, OSB operated without requiring any worker, including Plaintiffs, to be injected with any of these drugs. OSB did not require any employees to be injected with a flu vaccine or any other vaccinations.

23.     In the months following these EUAs, OSB did not require any of its employees to get injected with any these Covid-19 drugs, or any other vaccines.

24.     During these time periods, plaintiffs **Ms. Righteous, Ms. Lee, Ms. Jones, Ms. Holland, and Mr. Dunson** worked as paraeducators, which included working with certified and licensed educators and the blind children attending OSB. Plaintiff **Ms. Yazujian** worked in the OSB kitchen, helping prepare meals for students and staff.

***OSB Enacts Its Illogical, Anti-Science, Racist Vaccine Policy***

25.     Despite OSB's knowledge that the vaccines did not prevent transmission of the virus that causes Covid-19, and despite OSB's knowledge that African Americans were the

most "vaccine hesitant" Americans, and despite that OSB and numerous other institutions, including Congress and almost all federal courts, had been operating in-person without any vaccine mandate, OSB announced, in September, 2021, its new policy that all OSB employees were required to be injected with a Covid-19 "vaccine."

26.     OSB's new policy denied employees the option of continuing to work at OSB without being injected.  That is, OSB provided no testing option for its employees who may have been "vaccine hesitant." The *only* way for an employee to continue working at OSB without being injected, according to the policy, was if the worker applied for, and OBS granted, a medical or religious accommodation.

27.     OSB's vaccine policy explicitly admitted that OSB "cannot eliminate the risk of transmission on our campus, but it is taking steps to mitigate the risk," and erroneously stated, "Vaccination is the key prevention strategy to end the pandemic and return to normal and diminish the threat to vulnerable individuals."

28.     OSB knew that the vaccines did not prevent or reduce transmission.

29.     OSB announced that if employees did not provide proof of vaccination by November 29, 2021 or had not received an exemption, the worker would "be considered as having resigned from their employment."

30.     The use of "resigned" was intended by OSB to intimidate and coerce its "vaccine hesitant" employees, by making them aware that if they chose to avoid injection with these novel drugs, they most likely would be denied Pennsylvania unemployment compensation

and would risk spiraling into poverty. This use of "resigned" was also intended as a way of thwarting any employees whom OSB fired for not being vaccinated from being able to sue OSB for any claims based on termination.

31.     OSB stated that any employee who received an exemption "must both comply with OSB's general masking mandate and provide the results of a weekly negative PCR test for COVID-19 from an approved testing site."

32.     Despite that it was widely known, including by OSB, that the vaccines did not prevent or indeed even reduce transmission and that vaccinated people were spreading Covid-19, OSB's policy did not require "vaccinated" employees to be tested for Covid-19. *Only unvaccinated employees* would be required to submit themselves to testing.

33.     That same month, on September 9, President Biden announced his sweeping OSHA mandate for employees of all U.S. businesses with more than 100 employees. But President Biden's policy allowed for a testing option: employees who did not want to be injected with the novel Covid-19 vaccines could test weekly instead.

34.     OSB's policy, however, did not provide any testing option for employees who did not want to be injected with the novel Covid-19 vaccines.  OSB never modified its policy to include such an option, as President Biden's policy did.

35.     Nor did OSB's policy account for the fact that many if not most people, including Plaintiffs, likely already had acquired immunity from Covid-19 from previous infection by this highly contagious and widespread virus. OSB's policy wholly ignored "natural immunity."

36.     The goal of OSB's policy was obviously not to prevent or reduce the spread of

Covid-19. It was to identify and discriminate against employees based on, *inter alia*, their

religion, race, and disability.

***Plaintiffs Request Accommodation of Their Sincerely Held Religious Beliefs -- and Ask to
Test Instead of Being Required to Vaccinate***

37.     Plaintiffs timely requested accommodations based on their sincerely held

religious beliefs and expressed those beliefs to OSB.

38.     OSB, through its then-HR Director, Carol Havens-Dobbs, responded by

informing each Plaintiff that OSB ***did not question the sincerity of their religious beliefs***.[2]

39.     Although OBS *was required under federal and Pennsylvania anti-discrimination laws*

to engage in an "interactive process" with Plaintiffs to identify and implement reasonable

accommodations for their religious beliefs, HR Director Havens-Dobbs failed to do so. Rather,

she merely informed each Plaintiff that OSB was rejecting their requests for accommodation

because now, somehow, letting the Plaintiffs keep working at OBS would be too dangerous.

40.     Instead, HR Director Havens-Dobbs told Plaintiffs that if they were not fully

vaccinated, they would be deemed to have voluntarily resigned. She gave them until

November 17, 2021 to advise whether they intended to get vaccinated.

---

[2] Because OSB acknowledged the sincerity of Plaintiff's religious beliefs, a recitation of these beliefs is not included in this Complaint. OSB's requiring Plaintiffs to explain their religious beliefs was highly intrusive, and Plaintiffs never should have been forced to divulge their personal beliefs to OSB given that the policy for which Plaintiffs sought accommodation was nonsensical *ab initio*. Including Plaintiffs' personal religious beliefs in this public Complaint would further invade Plaintiffs' privacy and might subject Plaintiffs to further abuse and further discrimination motivated by widespread anti-religious animus.

41.    At that point, Plaintiffs Arkeem Dunson, Nyoka Jones, and Sophia Yajuzian, and one other OSB employee, retained undersigned counsel. On November 17, 2021, undersigned counsel emailed a letter to HR Director Havens-Dobbs, asking OSB to reconsider its decision to fire these employees who had worked in-person through the pandemic without any Covid-19 vaccine, and to let them continue their service and take other precautions such as testing.

42.    In their November 17 letter, these Plaintiffs stated:

- The premise of the "vaccine" requirement was baseless, as these novel drugs did not prevent or meaningfully reduce transmission of the virus that causes Covid-19. Plaintiffs illustrated this commonsense point with information from the FDA as well as to other sources, including an opinion from the United States Court of Appeals for the Fifth Circuit that stated bluntly that vaccinating employees against Covid-19 "cannot prevent vaccinated employees from spreading the virus in the workplace." *See BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604, 616, n. 19 (5th Cir. 2021)

- The "unvaccinated" and the "vaccinated" were similarly spreading Covid-19, according to news articles and studies from established sources including THE NEW ENGLAND JOURNAL OF MEDICINE and THE LANCET.

- The only other school for the blind in Pennsylvania, Western Pennsylvania School for Blind Children, in Pittsburgh, did not require any its employees to be injected with any of these novel Covid-19 drugs.

- Numerous other schools for the blind in the United States did not require any of their employees to be injected with any of these novel Covid-19 drugs.

- Numerous employers, including the White House, Congress, most federal and state courts, the FDA, the CDC, and several large corporations, did not require their employees to be injected with these novel Covid-19 drugs.

- Plaintiffs were willing to continue using the protective measures OSB required them to use for more than a year while working fulltime at OSB and working closely with students.

- OSB should "continue the legally required interactive process with" Plaintiffs, who were willing to work with OSB to achieve reasonable accommodation.

- Some of the Plaintiffs had or likely already had acquired immunity to Covid-19 via previous infection, and numerous, studies showed that such naturally-acquired immunity is superior to and more durable than any immunity gained from the Covid-19 vaccines, such that "Firing employees who have natural immunity because they will not get vaccinated would be nonsensical and illegal."

- Firing these workers would gratuitously harm OSB's students: "Many OSB students have likely grown attached to these caring dedicated workers, which is a tribute to OSB."

43.     Rather than engage meaningfully with these points, OSB, through HR Director Havens-Dobbs, dismissively told Plaintiffs that they must provide proof that they have been

injected with these novel biotech drugs -- or they would be deemed to have voluntarily resigned.

44.     OSB refused to consider the information Plaintiffs provided because OSB's real reason for firing Plaintiffs was not, and logically could not have been, to protect anybody. Rather, OSB's real reasons were: animus against all Plaintiffs based on religion, race, and disability -- OSB perceived them as infected and contagious--; and genetics, *i.e.,* Plaintiffs were not among the people injected with the Covid-19 novel gene therapy drugs that were designed to instruct their DNA to *create* the noxious "spike protein" from the SARS-CoV-2 virus for an indefinite and unknown period of time. Plaintiffs were different, *genetically*, from OSB staff who had been injected – and OSB intentionally discriminated against them on that basis.

***OSB Fires Plaintiffs Righteous, Lee, Jones, Holland, Dunson, and Yazujian***

45.     On or about November 29 and 30, 2021, Plaintiffs reported to work at OSB and showed they were ready, willing, and able to keep working for OSB -- as they had done throughout much of the pandemic without ever being injected with novel biotech Covid-19 vaccines that did not prevent or reduce transmission.

46.     Now, however, OSB barred them from coming onto OSB grounds.

47.     OSB treated Plaintiffs as if they were, without the vaccine, permanently sick and contagious, despite that OSB was aware its "vaccinated" employees were likely to spread Covid-19.

48.     Nevertheless, that same day and for all relevant times thereafter, OSB has let "vaccinated" employees come onto OSB grounds and enter OSB buildings to interact with other employees and students, despite that OSB knew that vaccinated people were as likely to contract and spread COVID as unvaccinated people. OSB did not require any vaccinated employees, whom OSB knew could spread Covid-19, to test regularly for Covid-19.

49.     OSB told the fired Plaintiffs they could return to work at OSB only if they provided proof of vaccination. OSB's offer was an empty gesture, because OSB was conditioning any reinstatement on the presumptuous and discriminatory and humiliating requirement for Plaintiffs to act *contrary to what OSB knew were their sincerely held religious beliefs*.

50.     Upon information and belief, OSB accommodated only two of its employees' requests for exemption based on medical concerns and/or religious beliefs.  One was a Black security guard, whom OSB "accommodated" by moving him to the night shift, which was in fact a retaliation against him for exercising his rights to accommodation of his religious beliefs as well as for his prior protected activity of filing a lawsuit against OSB in July, 2021 for discrimination based on race, sex, and age. Upon information and belief, OSB did not fire him because it feared doing so would be regarded as retaliation for his pending federal lawsuit against OSB.

51.     It would have been no burden to OSB to let the Plaintiffs continue working for OSB without being vaccinated.

52.     OSB was aware that its policy was racist. Although Black people made up just 36% of the OSB workforce (90 out of 250) at that time, *the five Black Plaintiffs OSB fired constituted 83% of all the workers OSB fired for declining to be injected.* That is, OSB fired six workers, and all but one of them was Black.

53.     Despite this glaring disparity, OBS did not reverse its decision to fire Plaintiffs and did not revise its racist policy.

### *After OSB Fired Plaintiffs, It Continued to Discriminate and Retaliate Against Them*

54.     After firing Plaintiffs, OSB continued, intentionally, to harm them and retaliate against them, based on OBS's animus against religion, race, disability, and the genetic difference between Plaintiffs and OSB's injected employees.

55.     For example, all five Black Plaintiffs applied for Pennsylvania unemployment compensation. None of them received any such financial assistance, because OSB opposed it and did not assist them in receiving this money to help them avoid spiraling into poverty.  On the other hand, OSB did not oppose or otherwise obstruct the successful application for unemployment compensation by Ms. Yazujian, who is white.

56.     For example, OSB did not provide the Black Plaintiffs the bonus or any portion of the bonus they expected to receive.  On the other hand, OSB did provide this bonus or portion of this bonus to Ms. Yazujian, who is white.

57.     OSB perpetrated this beggaring of the Black employees it fired with full

knowledge that Black people, because of racism, face difficulties in being hired for a new job -- especially after being fired from their previous job.

58.     This discrepancy in OSB's treatment of these former employees suggests that OSB's firing of Ms. Yazujian was an attempt to camouflage OSB's racist motive behind the firing of the five other employees.

*After the "Unvaccinated" Plaintiffs Were Gone, OSB Had to Return to Operating Remotely – Because Its "Vaccinated" Workers Were Spreading COVID-19*

59.     Just weeks after OSB fired Plaintiffs for being "unvaccinated," and after the "unvaccinated" security guard went out on disability leave for a workplace injury, OSB's "vaccinated" employees and students experienced numerous Covid-19 infections. As a result, OSB closed down its in-person operations and returned to "remote" operations.

60.     Despite that OSB could have recalled the five Black Plaintiffs to work at their former jobs "remotely," where they would pose none of the purported danger to others that OSB had, falsely, claimed they posed, OSB did not offer to rehire any of them, even temporarily. Such temporary work, especially during the holiday season, and especially after being denied unemployment benefits, would have helped Plaintiffs recover financially after being fired by OSB.

61.     Despite that it was beyond obvious to OSB that the "vaccines" did not prevent or reduce transmission, and that vaccinated people, including OSB employees, were spreading COVID-19, OSB continued to refuse to offer to reinstate any of the Plaintiffs without requiring

them first to violate their sincerely held religious beliefs by getting "vaccinated."

62.     Despite that anyone with an elementary understanding of virology and vaccination knew that infection with Covid-19 would provide some immunity against future infection, and that all Plaintiffs had provided OSB with links to studies supporting this point, OSB never asked any of the Plaintiffs if they had acquired such immunity.

63.     Despite the outbreaks that forced OSB to go remote, and despite that OSB knew its "vaccinated" workers and students were becoming infected with Covid-19 and transmitting it to others, OSB did not update its policy to require that "vaccinated" workers and students be tested for Covid-19. This makes clear that the motivation for OSB's pandemic policy was not to help mitigate the effects on the pandemic on its students and staff but simply to provide OSB with a handy excuse to summarily fire employees based on discriminatory motives.

64.     Nor, despite the impossible-to-ignore real-world inconvenient evidence of vaccine failure, did OSB update its policy to require "boosters," which Pfizer and Moderna claimed would improve the weakened-over-time purported protection they had claimed their vaccines provided against serious illness (not transmission). OSB had no need to require boosters, as it had already achieved its goal to fire employees based on discriminatory motives.

***Plaintiffs Try to Convince OSB to Rehire Them Given OSB Could Not Reasonably Claim the Vaccines Prevented or Reduced Transmission***

65.     After firing Plaintiffs, OSB retained outside corporate employment defense counsel, Jeffrey Pasek, Esquire, from the large, well-known, corporate law firm Cozen &

O'Connor in Philadelphia.

66.     Plaintiffs Righteous, Lee, Jones, Holland, and Dunson, through their counsel, attempted to engage Mr. Pasek in a belated interactive process to try to stanch the damage and suffering OSB had inflicted on them and was continuing to inflict on them.  OSB had told the Plaintiffs that they could return to their jobs if they "got vaccinated."

67.     Plaintiffs Righteous, Lee, Jones, Holland, Dunson, through their counsel, presented Mr. Pasek with additional studies and news stories regarding the obvious and incontrovertible evidence that the vaccines did not prevent or reduce transmission and explained that the Plaintiffs OSB had fired therefore posed no more of a threat of transmitting Covid-19 than any of OSB's "fully vaccinated" employees.

68.     Mr. Pasek responded by doubling down on OSB's debunked claim that the vaccines prevented and/or reduced transmission.

69.     On or about February 9, 2022, Mr. Pasek suggested that Plaintiff's counsel gather materials to submit to try to convince an "expert," *hired by OSB and paid by OSB,* that the vaccines did not prevent or even reduce transmission.

70.     OSB's offer was an empty gesture, a bullying tactic by a powerful entity. Any expert *hired by and paid by OSB* would, of course, repeat what the expert knew OSB wanted the expert to say. Moreover, there would be no reason for anybody to credit the observations of an "expert" hired and paid by OSB, when everyone knew the FDA, the CDC, and mainstream media had admitted what anybody could see with their own eyes:  the Covid-19 vaccines did

not prevent or reduce transmission.

*Plaintiffs File Charges With the EEOC and PHRA*

71.     Needing to prevent further damage to their lives, all Plaintiffs at various points exercised their federal and Pennsylvania rights to file charges with the Equal Employment Opportunity Commission (EEOC) and Pennsylvania Human Relations Commission (PHRC) and obtained right-to-sue letters and timely filed this lawsuit.

*"Following the Science" (Finally), OSB Rescinds Its Ineffectual Vaccine Mandate*

72.     On or about December 20, 2022, OSB rescinded its vaccine mandate. It told the workers it fired that they could apply again for their jobs. There was no offer of the lost pay – more than a year for the Plaintiffs, or compensation for any other losses.  Plaintiff Lee returned to work at OSB two months later, on or about February 21, 2023, without any compensation for the discrimination and retaliation OSB had perpetrated against her.

<u>**COUNT I**</u>

*Title VII Religious Discrimination and Retaliation*

73.     The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

74. Plaintiffs are protected under Title VII from discrimination in the workplace based on their religious beliefs and from retaliation for engaging in protected activity regarding discrimination for religious beliefs.

75. OSB is an "employer" under Title VII and falls within jurisdiction of the statute.

76. OSB fired Plaintiffs and refused to rehire the Plaintiffs it fired because of their religion and because of their claims that the firings were based on religion.

77. Based on the foregoing, OSB subjected Plaintiffs to discrimination based on their religious beliefs and retaliated against them for engaging in protected activity regarding those beliefs, in violation of Title VII.

78. These violations were intentional and willful and malicious and warrant imposing punitive damages.

79. As the direct and proximate result of OSB's violating Title VII's rules against religious discrimination and retaliation, Plaintiffs have sustained loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, harm to their reputations, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

80. Plaintiffs are suffering and will continue to suffer irreparable harm and monetary damages as a result of OSB's illegal conduct unless and until this Court grants the relief requested herein.

## COUNT II

### *PHRA – Religious Discrimination and Retaliation*

81.     The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

82.     Plaintiffs are protected under the Pennsylvania Human Rights Act (PHRA) (42 U.S.C. § 2000e- 2 et seq.) from discrimination in the workplace based on their religious beliefs and from retaliation for engaging in protected activity regarding those beliefs.

83.     OSB is an "employer" under the PHRA and falls within jurisdiction of the statute.

84.     OSB fired Plaintiffs and refused to rehire the Plaintiffs because of their religion and because of their claims that the firings were based on religion.

85.     Based on the foregoing, OSB subjected Plaintiffs to discrimination based on their religious beliefs and retaliated against them for engaging in protected activity regarding those beliefs, in violation of the PHRA.

86.     These violations were intentional and willful and malicious and warrant imposing liquidated damages.

87.     As the direct and proximate result of OSB's breaking PHRA's rules against religious discrimination and retaliation, Plaintiffs have sustained loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

88.     Plaintiffs are now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant OSB's illegal conduct unless and until this Court grants the relief requested herein.

## COUNT III

### Title VII – Race Discrimination and Retaliation

89.     Plaintiffs are protected under Title VII from discrimination in the workplace based on their race and from retaliation for engaging in protected activity regarding their race.

90.     OSB is an "employer" under Title VII and falls within jurisdiction of the statute.

91.     OSB fired Plaintiffs Righteous, Lee, Jones, Holland, and Dunson because they are Black.

92.     OSB fired Plaintiff Yazujian because she is white, to try to cover up that OSB was engaging in race discrimination in intentionally creating a policy that resulted in firing employees the overwhelming majority of whom were Black.

93.     OSB refused to rehire the Plaintiffs it fired because of their race and because of their claims that the firings were based on race.

94.     Based on the foregoing, OSB subjected Plaintiffs to discrimination based on their race and retaliation for engaging in protected activity regarding their race in violation of Title VII.

95.     These violations were intentional and willful and malicious and warrant imposing punitive damages.

96.     As the direct and proximate result of Defendant OSB's breaking Title VII's rules against race discrimination and retaliation, Plaintiffs have sustained loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, harm to their reputations, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

97.     Plaintiffs are suffering and will continue to suffer irreparable harm and monetary damages as a result of OSB's illegal conduct unless and until this Court grants the relief requested herein.

## COUNT IV

### *PHRA – Race Discrimination and Retaliation*

98.     The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

99.     Plaintiffs are protected under the Pennsylvania Human Rights Act (PHRA) (42 U.S.C. § 2000e- 2 et seq.) from discrimination in the workplace based on their race and from retaliation for engaging in protected activity regarding race.

100.     OSB is an "employer" under the PHRA and falls within jurisdiction of the statute.

101.     OSB fired Plaintiffs Righteous, Lee, Jones, Holland, and Dunson because they are Black.

102.    OSB fired Plaintiff Yazujian because she is white, to try to cover up that OSB was engaging in race discrimination in intentionally creating a policy that resulted in firing employees the vast majority of whom were Black.

103.    OSB refused to rehire the Plaintiffs because of their race and because of their claims that the firings were based on race.

104.    Based on the foregoing, OSB subjected Plaintiffs to discrimination based on their race and retaliation for engaging in protected activity regarding their race in violation of the PHRA.

105.    These violations were intentional and willful and malicious and warrant imposing liquidated damages.

106.    As the direct and proximate result of OSB's breaking the PHRA's rules against race discrimination and retaliation, Plaintiffs have sustained loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

107.    Plaintiffs are now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant OSB's illegal conduct unless and until this Court grants the relief requested herein.

## COUNT V

### *Section 1981*

108.    The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

109.    Plaintiffs are protected under Section 1981 from discrimination in the workplace based on their race and from retaliation for engaging in protected activity regarding their race.

110.    OSB falls within jurisdiction of Section 1981.

111.    Based on the foregoing, OSB has engaged in unlawful employment practices in violation of Section 1981.

112.    OSB fired Plaintiffs Righteous, Lee, Jones, Holland, and Dunson and refused to rehire them because they are Black, and because OSB is retaliating against them for claiming that OSB's Covid-19 vaccination policy and firing them were race discrimination.

113.    OSB fired Plaintiff Yazujian because she is white, to try to cover up that OSB was engaging in race discrimination in intentionally creating a policy that resulted in firing employees the vast majority of whom were Black. OSB has refused to rehire her because of her race and because OSB is retaliating against her for claiming that OSB's Covid-19 vaccination policy and firing her were race discrimination.

114.    These violations were intentional and willful and malicious and warrant imposing punitive damages.

115.    As the direct and proximate result of OSB's breaking Section 1981's rules against race discrimination and retaliation, Plaintiffs have sustained loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, harm to their reputation, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

116.    Plaintiffs are now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant OSB's illegal conduct unless and until this Court grants the relief requested herein.

## COUNT VI

### *Disability Discrimination Under the Americans with Disabilities Act*

117.    The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

118.    Plaintiffs are protected under the ADA from discrimination in the workplace based on disability, including perceived disability, and from retaliation for engaging in protected activity regarding disability discrimination.

119.    OSB is an "employer" under the ADA and falls within jurisdiction of the statute.

120.    Defendant OSB's firing Plaintiffs Righteous, Lee, Jones, Holland, Dunson, and Yazujian was deliberate and willful and intended to harm Plaintiffs based on OSB's perception that they were disabled with Covid-19 and were permanently imminently likely to infect coworkers and students because they were "unvaccinated."

121.    In addition, OSB's refusal to rehire the Plaintiffs it fired was further

discrimination against them based on disability and retaliation for their claims that their

termination was disability discrimination.

122.    OSB has acted in the absence of good faith and reasonable grounds. Its actions

were outrageous, egregious, malicious, intentional, willful, wanton, and in reckless disregard

of the rights of Plaintiffs and warrant the imposition of all available damages including

punitive damages.

123.    As the direct and proximate result of OSB's violations of the ADA's protection

against disability discrimination and retaliation, Plaintiffs have sustained loss of pay and

related financial harm, emotional and psychological distress, loss of self-esteem, and loss of

future earning power along with and/or in addition to the damages and losses set forth herein.

124.    Plaintiffs are now suffering and will continue to suffer irreparable harm and

monetary damages as a result of Defendant OSB's illegal conduct unless and until this Court

grants the relief requested herein.

## COUNT VII

### *PHRA – Disability Discrimination and Retaliation*

125.    The allegations contained in the preceding paragraphs are hereby realleged and

incorporated by reference herein.

126.    Plaintiffs are protected under the Pennsylvania Human Rights Act (PHRA) (42

U.S.C. § 2000e- 2 et seq.) from discrimination in the workplace based on their disability and

perceived disability and from retaliation for engaging in protected activity regarding disability discrimination.

127.    OSB is an "employer" under the PHRA and falls within jurisdiction of the statute.

128.    Based on the foregoing, OSB subjected Plaintiffs to discrimination based on OSB's perception that they were disabled with Covid-19 and were permanently imminently likely to infect coworkers and students because they were "unvaccinated."

129.    Defendant OSB's firing Plaintiffs Righteous, Lee, Jones, Holland, Dunson, and Yazujian was deliberate and willful and intended to harm Plaintiffs based on OSB's perception that they were disabled with Covid-19 and were permanently imminently likely to infect coworkers and students because they were "unvaccinated."

130.    In addition, OSB's refusal to rehire the Plaintiffs it fired was further discrimination against them based on disability and retaliation for their claims that their termination was disability discrimination.

131.    These violations were intentional and willful and malicious and warrant imposing liquidated damages.

132.    As the direct and proximate result of OSB's violations of the PHRA's protection against disability discrimination and retaliation, Plaintiffs have sustained loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

133.    Plaintiffs are now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant OSB's actions unless and until this Court grants the relief requested herein.

## COUNT VIII

### *GINA –Discrimination and Retaliation Based on Genetic Information*

134.    The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

135.    GINA prohibits discrimination based on genetic information. Employers may not discriminate against employees based on genetic information the employer knows about the employees. Nor may employers retaliate against employees who claim discrimination based on genetic information.

136.    OSB is an "employer" under the GINA and falls within jurisdiction of the statute.

137.    The Covid-19 vaccines OSB fired Plaintiffs for not taking are based on injecting genetic information into a person and changing or manipulating that person's genetic information.

138.    According to the CDC, "Messenger RNA, or mRNA, is genetic material that tells your body how to make proteins."

139.    According to Genome.gov, "mRNA acts as a cellular messenger. DNA, which is stored in a cell's nucleus, encodes the genetic information for making proteins. mRNA

transfers a copy of this genetic information outside of the nucleus, to a cell's cytoplasm, where it is translated into amino acids by ribosomes and then folded into complete proteins."

140.    According to Pfizer, its vaccine contains messenger RNA (mRNA), a kind of genetic material, and a piece of the SARS-CoV-2 virus' genetic material that instructs cells in the body to make the virus' distinctive and noxious "spike" protein and trigger the immune system to learn to react defensively, producing an immune response against the virus.

141.    People who have been injected with a COVID-19 vaccine therefore possess different genetic material or genetic information than those who do not.

142.    OSB discriminated against Plaintiffs based on their vaccination status, which violates GINA.

143.    Based on the foregoing, OSB subjected Plaintiffs to discrimination based on genetic information, and retaliation for their claims that they were discriminated against based on genetic information by refusing to rehire them.

144.    These violations were intentional and willful and malicious and warrant imposing punitive damages.

145.    As the direct and proximate result of OSB's violations of GINA's protection against genetic information discrimination and retaliation, Plaintiffs have suffered loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

146.    Plaintiffs are now suffering and will continue to suffer irreparable harm and

monetary damages as a result of OSB's actions unless and until this Court grants the relief

requested herein.

**PRAYER FOR RELIEF**

168.    The allegations contained in the preceding paragraphs are hereby realleged and

incorporated by reference herein.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in their

favor and against Defendant, OSB:

a.      Declaring that the acts and practices complained of herein violate Title VII

protections against discrimination and retaliation for protected activity based on religion;

b.      Declaring that the acts and practices complained of herein violate the PHRA

protections against discrimination and retaliation based on religion;

c.      Declaring that the acts and practices complained of herein violate Title VII

protections against discrimination and retaliation for protected activity based on race;

d.      Declaring that the acts and practices complained of herein violate the PHRA

protections against discrimination and retaliation based on race;

e.      Declaring that the acts and practices complained of herein violate Section 1981;

f.      Declaring that the acts and practices complained of herein violate the ADA;

g.      Declaring that the acts and practices complained of herein violate PHRA

protections against discrimination and retaliation based on disability;

h.      Declaring that the acts and practices complained of herein violate GINA;

i.      Declaring that OSB's violations of Title VII, the PHRA, Section 1981, the ADA, and GINA were willful and intentional and malicious;

j.      Enjoining and restraining permanently the acts and practices complained of herein;

k.      Awarding compensatory damages to Plaintiffs to make Plaintiffs whole for all lost earnings capacity that Plaintiffs have suffered and will continue to suffer as a result of the discriminatory and retaliatory conduct of OSB complained of herein;

l.      Awarding compensatory damages to Plaintiffs to make Plaintiffs whole for all past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, loss of self-esteem, and all other pain and suffering arising from the discriminatory and retaliatory conduct of OSB complained of herein;

m.      Awarding liquidated damages to Plaintiffs;

n.      Awarding punitive damages to Plaintiffs;

o.      Awarding Plaintiffs the costs of this action together with reasonable attorneys' fees;

p.      Awarding Plaintiffs pre- and post-judgment interest;

q.      Awarding Plaintiff such other damages as are appropriate under Title VII, the PHRA, Section 1981, the ADA, GINA, and Pennsylvania law prohibiting retaliation for filing a workers compensation claim; and

r.      Granting such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiffs demands a trial by jury on all issues so triable.

**BRIAN J. FOLEY, ATTORNEY AT LAW**

BY:_____
**BRIAN J. FOLEY, ESQUIRE**
Attorney for Plaintiffs

Date:  May 9, 2023

## CERTIFICATE OF SERVICE

I, BRIAN J. FOLEY, ESQ., attorney for Plaintiffs, hereby certify that on the date below that a true and correct copy of the foregoing *Second Amended Complaint* was filed electronically and is available for viewing and downloading from the Court's ECF system and was served upon all counsel of record through the Court's ECF system.

_____

Brian J. Foley, Esquire

Date: May 9, 2023