**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| DIVINE EQUALITY RIGHTEOUS, et al., | : : : | |
| Plaintiffs, | : : : | Civil Action No. 2:23-cv-00846-WB |
| v. | : : | |
| OVERBROOK SCHOOL FOR THE BLIND, | : : : | |
| Defendant. | : : | |

**OVERBROOK SCHOOL FOR THE BLIND'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

COZEN O'CONNOR, P.C.
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Phone: 215-665-2072
Fax: 215-701-2072
Email: jpasek@cozen.com
Email: cjkelly@cozen.com
*Attorneys for Defendant*

JEFFREY I. PASEK, ESQ. (PA 23700)
CHRISTOPHER J. KELLY, ESQ. (PA 325427)
*On The Brief*

# <u>TABLE OF CONTENTS</u>

**Page**

1.  INTRODUCTION ................................................................................................ 1

2.  ALLEGATIONS IN THE COMPLAINT, WHICH MUST BE TAKEN AS TRUE FOR PURPOSES OF THIS MOTION .................................................................... 2

3.  LEGAL STANDARD ........................................................................................ 3

    A.  Rule 12(b)(6) .......................................................................................... 3

    B.  Rule 12(f) ............................................................................................... 4

4.  ARGUMENT ..................................................................................................... 5

    A.  Plaintiffs' Second Amended Complaint Fails to State a Claim Upon Which Relief can be Granted and Should be Dismissed with Prejudice ........................... 5

        1.  Plaintiffs' Second Amended Complaint Fails to State a Claim for Relief for Religious Discrimination under Title VII or the PHRA (Counts I and II) ............................................................. 5

            a)  Plaintiffs have failed to allege a sincerely held religious belief ............................................................................ 6

            b)  Plaintiffs' requested accommodation would have imposed an undue burden on OSB because it would have increased the risk of transmitting COVID-19 to a vulnerable student population and other employees. .................................... 9

        2.  Plaintiffs' Complaint Fails to State a Claim for Relief for Race Discrimination under Title VII, the PHRA, and Section 1981 (Counts III, IV, and V) ............................................................. 13

        3.  Plaintiffs' Second Amended Complaint Fails to State a Claim for Relief for Disability Discrimination under the Americans with Disabilities Act or the PHRA (Counts VI and VII) ................................. 17

            a)  Plaintiffs have not Alleged Facts Sufficient to Show that they were Disabled or that OSB Regarded Them as Disabled. .... 18

            b)  Even if Plaintiffs were qualified individuals, Plaintiffs' requested accommodation would have imposed an undue hardship on OSB and posed a direct threat to OSB's staff and vulnerable student population. ........................................ 20

i

4.      Plaintiffs' Second Amended Complaint Fails to State a Claim
        for Relief for Retaliation under Title VII, the ADA, GINA or the
        PHRA (Counts I, II, II, IV, VII, and VIII)................................................. 23

5.      Plaintiffs' Second Amended Complaint Fails to State a Claim
        for Relief for Genetic Information Discrimination under GINA
        (Count VIII) ............................................................................................ 24

B.      In the Alternative, Plaintiffs' Allegations Pertaining to Hyperlinked
        Newspaper Articles are Immaterial, Impertinent, and Scandalous and
        Should be Stricken .......................................................................................... 25

5.      CONCLUSION............................................................................................................ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Africa v. Pennsylvania,*
    662 F.2d 1025 (3d Cir. 1981)................................................................................7, 9

*Anspach v. City of Phila.,*
    503 F.3d 256 (3d Cir. 2007)...................................................................................2

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...........................................................................................3, 4

*Barrington v. United Airlines, Inc.,*
    566 F. Supp. 3d 1102 (D. Colo. 2021)................................................................10

*Baum v. Dunmire Prop. Mgmt.,*
    2022 WL 889097 (D. Col., Mar. 25, 2022) ........................................................20

*Bravo v. De Blasio,*
    167 N.Y.S.3d 708 (N.Y. Sup. Ct. 2022) .............................................................15

*Brown v. Fed. Express Corp.,*
    62 F. Supp. 3d 681 (W.D. Tenn. 2014)...............................................................25

*Brown-Eagle v. County of Erie,*
    Civ. No. 12-314, 2013 WL 5875085 (W.D. Pa. Oct. 30, 2013) .............................7

*Buskirk v. Apollo Metals,*
    307 F.3d 160 (3d Cir. 2002).................................................................................22

*Capps v. Mondelez Glob.,*
    LLC, 847 F.3d 144 (3d Cir. 2017) .......................................................................20

*Champion v. Mannington Mills, Inc.,*
    538 F. Supp. 3d 1344 (M.D. Ga. 2021) ..............................................................20

*Chevron U.S.A. Inc. v. Echazabal,*
    536 U.S. 73 (2002)...............................................................................................22

*Ciolli v. Iravani,*
    625 F. Supp. 2d 276 (E.D. Pa. 2009) ..................................................................28

*City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp,*
    908 F.3d 872 (3d Cir. 2018).................................................................................4

*City of Pittsburgh v. W. Penn Power Co.*,
    147 F.3d 256 (3d Cir. 1998)................................................................20

*Colwell v. Rite Aid Corp.*,
    602 F.3d 495 (3d Cir. 2010)................................................................21

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
    589 U.S. ___, 140 S. Ct. 1009, 206 L.Ed.2d 356 (2020)........................16

*Connelly v. Lane Constr. Corp.*,
    809 F.3d 780 (3d Cir. 2016)..................................................................4

*Cupi v. Carle Bromenn Med. Ctr.*,
    2022 WL 138632 (C.D. Ill., Jan. 14, 2022) ..........................................20

*Does 1-6 v. Mills*,
    16 F.4th 20 (1st Cir. 2021), *cert. denied sub nom. Does 1-3 v. Mills*, 212 L.
    Ed. 2d 9, 142 S. Ct. 1112 (2022) ................................................11, 21

*Dole v. Arco Chem. Co.*,
    921 F.2d 484 (3d Cir. 1990)..................................................................4

*Domino's Pizza, Inc. v. McDonald*,
    546 U.S. 470, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006)....................16

*Draper v. U.S. Pipe & Foundry Co.*,
    527 F.2d 515 (6th Cir. 1975) ..........................................................10, 11

*EEOC v. STME, LLC*,
    938 F.3d 1305 (11th Cir. 2019) ..........................................................19

*Eshelman v. Agere Systems, Inc.*,
    554 F.3d 426 (3d Cir. 2009)................................................................17

*Evancho v. Fisher*,
    423 F.3d 347 (3d Cir. 2005)..................................................................2

*Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*,
    200 F. Supp. 3d 553 (E.D. Pa. 2016), aff'd, 877 F.3d 487 (3d Cir. 2017) ...............6

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 51 (1994)........27

*Fasold v. Justice*,
    409 F.3d 178 (3d Cir. 2005)..................................................................5

*Federoff v. Geisinger Clinic*,
    571 F. Supp. 3d 376 (M.D. Pa. 2021) ....................................................8

*Finkbeiner v. Geisinger Clinic*,
   623 F. Supp. 3d 458 (M.D. Pa. 2022) ......................................................................8

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009).....................................................................................3

*Friend v. Astrazeneca Pharm. LP*,
   No. SAG-22-03308, 2023 U.S. Dist. LEXIS 83749 (D. Md. May 11, 2023) ..........7

*Geerlings v. Tredyffrin/Easttown Sch. Dist.*,
   Civil Action No. 21-cv-4024, 2021 U.S. Dist. LEXIS 183966 (E.D. Pa. Sep.
   27, 2021) (J. Goldberg)............................................................................................7

*Godfredson v. JBC Legal Group*,
   P.C., 387 F. Supp. 2d 543 (E.D.N.C. 2005)...........................................................26

*Gonzalez v. Napolitano*,
   No. 2:09-cv-03426, 2011 U.S. Dist. LEXIS 27053 (D.N.J. Mar. 16, 2011) ..........20

*Griswold v. Coventry First LLC*,
   No. 10-5964, 2015 WL 710365 (E.D. Pa. Feb. 18, 2015) ........................................5

*Haley Pain Co. v. E.I. Du Pont de Nemours & Co.*,
   279 F.R.D. 331 (D. Md. 2012)................................................................................26

*Hice v. Mazzella Lifting Techs., Inc.*,
   589 F. Supp. 3d 539 (E.D. Va. 2022) .....................................................................18

*James v. City of Wilkes-Barre*,
   700 F.3d 675 (3d Cir. 2012).....................................................................................4

*Johnson v. Tyson Foods, Inc.*,
   No. 21-cv-01161, 2023 U.S. Dist. LEXIS 100082 (W.D. Tenn. June 8, 2023) ......19

*Jorgenson v. Conduent Transp. Sols., Inc.*,
   No. 22-cv-01648 (SAG), 2023 WL 1472022 (D. Md. Feb. 2, 2023) ......................18

*Kimber-Anderson v. City of Newark*,
   502 F. App'x 210 (3d Cir. 2012) ............................................................................14

*Krouse v. Am. Sterilizer Co.*,
   126 F.3d 494 (3d Cir. 1997)....................................................................................23

*Leggo v. M.C. Dean, Inc.*,
   No. 22-cv-374, 2023 WL 1822383 (E.D. Va. Feb. 7, 2023) ..................................19

*Mart v. Forest River, Inc.*,
   No. 3:10cv118, 2011 WL 924289 (N.D. Ind. 2011)...............................................27

*McInerney v. Moyer Lumber and Hardware, Inc.*,
 244 F. Supp. 2d 393 (E.D. Pa. 2002) ...................................................................26

*Moore v. City of Philadelphia*,
 461 F.3d 331 (3d Cir. 2006)........................................................................23, 24

*Murphy v. Cadillac Rubber & Plastics, Inc.*,
 946 F. Supp. 1108 (W.D.N.Y.1996) ..................................................................27

*Nabors v. Lewis*,
 No. CV 6:17-2887-DCC-KFM, 2018 WL 7118008 (D.S.C. Feb. 16, 2018) ..........................27

*O'Hailpin v. Hawaiian Airlines, Inc.*,
 583 F. Supp. 3d 1294 (D. Haw. 2022), *appeal dismissed*, No. 22-15215, 2022
 WL 3339844 (9th Cir. July 13, 2022)..................................................................11

*Oran v. Stafford*,
 226 F.3d 275 (3d Cir. 2000)..............................................................................4

*Perkins v. Silverstein*,
 939 F.2d 463 (7th Cir.1991) ...........................................................................27

*Pinsker v. Joint Dist. No. 28J of Adams & Arapahoe Ctys.*,
 735 F.2 388, 390–91 (10th Cir. 1984) ...............................................................10

*Prewitt v. Walgreens Co.*,
 Civ. A. No. 11-2393, 2012 WL 4364660 (E.D. Pa. Sept. 25, 2012) ...................................6, 7

*Prince v. Massachusetts*,
 321 U.S. 158 (1944)........................................................................................11

*Protos v. Volkswagen of Am., Inc.*,
 797 F.2d 129 (3d Cir. 1986)..............................................................................7

*Robinson v. Children's Hosp. Boston*,
 CV 14-10263-DJC, 2016 WL 1337255 (D. Mass. Apr. 5, 2016)................................10, 11, 22

*Rose v. Bartle*,
 871 F.2d 331 (3d Cir.1989)..............................................................................27

*Shelton v. Univ. of Med. & Dentistry of N.J.*,
 223 F.3d 220 (3d Cir. 2000)..............................................................................6

*Shklyar v. Carboline Co.*,
 No. 22-cv-391 (RWS), 2022 WL 2867073 (E.D. Mo. July 21, 2022), *aff'd*,
 No. 22-2618, 2023 WL 1487782 (8th Cir. Feb. 3, 2023) .......................................19

*Steak Umm Co., LLC v. Steak 'Em Up, Inc.*,
    No. 09–2857, 2009 U.S. Dist. LEXIS 101357 (E.D. Pa. Oct. 30, 2009) ................................ 28

*Tipcke v. Olmsted Med. Ctr.*,
    No. 22-2470, 2023 U.S. Dist. LEXIS 58793, at *7 (D. Minn. Apr. 4, 2023) ........................... 9

*Together Emps. v. Mass Gen. Brigham Inc.*,
    573 F. Supp. 3d 412 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022) ......................... 11, 21

*Trans World Airlines, Inc. v. Hardison*,
    432 U.S. 63, 97 S.Ct. 2264, 53 L. Ed. 2d 113 (1977) ........................................... 9, 21

*US Airways, Inc. v. Barnett*,
    535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002) ........................................ 21

*Webb v. City of Philadelphia*,
    562 F.3d 256 (3d Cir. 2009) ................................................................... 5, 6

*Winans v. Cox Auto., Inc.*,
    No. CV 22-3826, 2023 WL 2975872 (E.D. Pa. Apr. 17, 2023) ................................... 8

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972) ........................................................................... 6, 7

**Statutes**

43 Pa. Cons. Stat. § 955(d) (2020) ................................................................. 23

42 U.S.C. § 2000e(j) .............................................................................. 5

42 U.S.C. § 2000ff-1(b) ........................................................................... 24

42 U.S.C. § 2000ff(4)(A) .......................................................................... 24

42 U.S.C. § 12102(1) ........................................................................... 17, 18

42 U.S.C. § 12112(a) .............................................................................. 17

42 U.S.C. § 12112(b)(5)(A) ......................................................................... 18

42 U.S.C. § 12203(a) .............................................................................. 23

42 U.S.C. § 2000ff–6(f) ........................................................................... 23

29 C.F.R. § 1630.15(b)(2) .......................................................................... 22

**Other Authorities**

Charles A. Wright and Arthur R. Miller, 5A Federal Practice and Procedure 2d §
    1382, at 714 (1990) .................................................................................................................26

Fed. R. Civ. P. 12(b)(6) ............................................................................................................3, 4, 27

Fed. R. Civ. P. 12(f) .............................................................................................................1, 4, 26, 28

1.      **INTRODUCTION**

Defendant Overbrook School for the Blind ("OSB") is a private school for blind children, located in Philadelphia, PA, which serves approximately 181 blind, deafblind, or visually impaired students aged 3 to 21, many of whom suffer from other disabilities.  Plaintiffs are former OSB employees who refused to comply with OSB's mandatory COVID-19 vaccination policy.  Each Plaintiff requested a religious accommodation from compliance with the policy.  OSB evaluated their requests and determined that the Plaintiffs could not be accommodated without an undue hardship.  When the Plaintiffs nonetheless refused to be vaccinated by the deadline in the policy, they were terminated.  Plaintiffs assert that OSB discriminated against them based on their religious beliefs and failed to accommodate those beliefs.  In addition to Plaintiffs' religious discrimination claims, they claim discrimination and retaliation based on race, disability, and genetic information, and failure to accommodate under nearly every state and federal employment discrimination statute. For the reasons set forth herein, all of Plaintiffs' claims in their Second Amended Complaint are legally insufficient and fail to state cognizable claims for relief, and should be dismissed with prejudice.

In the alternative, OSB moves to strike Paragraphs ¶¶ 14-19 and 65-70 of Plaintiffs' Second Amended Complaint pursuant to Fed. R. Civ. P. 12(f) as they contain immaterial, impertinent and scandalous allegations and the hyperlinks are subject to editing by third parties.

2.     **ALLEGATIONS IN THE COMPLAINT, WHICH MUST BE TAKEN AS TRUE FOR PURPOSES OF THIS MOTION[1]**

Plaintiffs are all former employees of OSB. Second Amended Complaint (Dkt. No. 9) ¶¶ 3-8, 24 ("SAC").  Plaintiff Yazujian is Caucasian and worked in OSB's kitchen with other employees. *Id.* ¶¶ 24, 8.  The five other Plaintiffs are African-American paraeducators (teacher's aides who work under the direction of certified or licensed teachers) who worked in classrooms with OSB's students and other employees. *Id.* ¶¶ 3-8. In September of 2021, in light of the significant risks posed by the COVID-19 pandemic, OSB announced that all OSB employees would be required to be vaccinated for COVID-19 as of November 29, 2021. *Id.*, ¶ 26. OSB acknowledged in the policy that it could not "eliminate the risk of transmission on campus" but noted that the purpose of the policy was to "take steps to mitigate the risk."  The policy further noted that "Vaccination is the key prevention strategy to … diminish the threat to vulnerable individuals." *Id.,* ¶ 27. The policy specifically provided that employees could seek accommodations for disabilities or sincerely held religious beliefs. *Id.,* ¶ 26. OSB announced that if employees did not provide proof of vaccination by November 29, 2021 or had not received an exemption, the workers would "be considered as having resigned from their employment." *Id.,* ¶ 29.

Plaintiffs requested religious accommodations. *Id.*, ¶ 37. OSB did not at the time question the sincerity of the plaintiffs' religious claims but determined that it was unable to accommodate these particular employees, and informed them that if they were not fully vaccinated they would be deemed to have voluntarily resigned. *Id.*, ¶ 39. OSB gave them until November 17, 2021 to

---

[1] The following facts are taken as true for the purpose of the instant motion only. *Evancho v. Fisher,* 423 F.3d 347, 350 (3d Cir. 2005). "Bald assertions" contained in Plaintiffs' Second Amended Complaint without any factual basis cannot be taken as true and should not be credited by this Court. *Anspach v. City of Phila.,* 503 F.3d 256, 260-61 (3d Cir. 2007).

advise whether they intended to get vaccinated before the November 29th deadline. *Id.,* ¶ 40. Plaintiffs did not get vaccinated and were not permitted to return to OSB. *Id.*, ¶¶ 45-46. A seventh employee, Kevin Lewis, a security guard who is African American, also requested accommodation for his religious belief and was accommodated by being transferred to the night shift where he would not be in contact with other students or employees. Amended Complaint (Dkt. No. 5) ¶¶ 9, 51 ("AC").

After filing Charges of Discrimination with the Equal Employment Opportunity Commission, Plaintiffs brought suit against OSB. *See* ECF No. 1. Nearly two months later, Plaintiffs Amended their Complaint to add another plaintiff, and then promptly sought leave to remove that same plaintiff and for leave to file a Second Amended Complaint. *See* ECF Nos. 5 and 7. Plaintiffs subsequently filed a Second Amended Complaint, under which Plaintiffs allege nearly every conceivable employment discrimination claim, with much conjecture and no factual support. *See* SAC at ECF No. 9.

## 3. LEGAL STANDARD

### A. Rule 12(b)(6)

Rule 12(b)(6) provides for the dismissal of a complaint for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). While the court must accept all well-plead allegations as true and draw all reasonable inferences in favor of the

plaintiff, threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements are to be disregarded. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878–79 (3d Cir. 2018); *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012).

The Third Circuit has set forth a three-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6): (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim"; (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth'"; and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp*., 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679). The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, when a motion to dismiss is granted, the court must decide whether to grant leave to amend. While the Third Circuit has a liberal policy favoring amendments, here Plaintiffs have already amended their complaint twice, and have still failed to state a cognizable claim. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co*., 921 F.2d 484, 486 (3d Cir. 1990). Leave to amend further should be denied.

### B.    Rule 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "Content is immaterial when it has no essential or important relationship to the claim for relief. Content is impertinent when it does not pertain to the issues raised in the complaint. Scandalous material improperly casts a derogatory light on

someone, most typically on a party to the action." *Griswold v. Coventry First LLC*, No. 10-5964, 2015 WL 710365 at *7 (E.D. Pa. Feb. 18, 2015) (internal citations and alterations omitted).

4.    **ARGUMENT**

    A.    **Plaintiffs' Second Amended Complaint Fails to State a Claim Upon Which Relief can be Granted and Should be Dismissed with Prejudice**

        1.    **Plaintiffs' Second Amended Complaint Fails to State a Claim for Relief for Religious Discrimination under Title VII or the PHRA[2] (Counts I and II)**

Plaintiffs allege that OSB subjected them to discrimination based on their religious beliefs. Because Plaintiffs have failed to plead sufficient facts to state a claim that their objections to the COVID-19 vaccination requirement were sincerely held religious beliefs, and because Plaintiffs' requested accommodations would have imposed an undue burden on OSB, Plaintiffs' religious discrimination claims fail as a matter of law and should be dismissed.

Title VII prohibits employers from discharging or disciplining an employee based on their religion. *See Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009) (citing 42 U.S.C. § 2000e–2(a)(1)). The Act extends protection to "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate ... an employee's ... religious observance or practice without undue hardship on the... employer's business." 42 U.S.C. § 2000e(j).  To plead a prima facie case of religious discrimination, Plaintiffs must allege facts showing that: (1) they hold a sincere religious belief that conflicts with a job requirement; (2) they informed their employer of the conflict; and (3) they were disciplined for

---

[2]    The PHRA and federal anti-discrimination laws are interpreted identically, except where there is something specifically different in the PHRA's language requiring that it be treated differently. *Fasold v. Justice*, 409 F.3d 178, 184 n. 8 (3d Cir. 2005).

failing to comply with the conflicting requirement. *See Webb*, 562 F.3d at 259 (citing *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir. 2000)).

a)      Plaintiffs have failed to allege a sincerely held religious belief

To survive dismissal of a claim of religious discrimination under Title VII, Plaintiffs must, among other things, plausibly allege that they have a sincerely held religious belief. *Shelton*, 223 F.3d at 224. In order to analyze whether Plaintiffs have plausibly pled a claim of religious discrimination, "it is important to consider what a constitutionally protected religious observance is, as compared to a desire or preference that is not subject to accommodation." *Prewitt v. Walgreens Co.*, Civ. A. No. 11-2393, 2012 WL 4364660, at *8 (E.D. Pa. Sept. 25, 2012).  Title VII protects against discrimination based on beliefs, but only where those beliefs are sincerely held and religious in nature. *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 200 F. Supp. 3d 553, 563 (E.D. Pa. 2016) ("[B]eliefs are not protected merely because they are strongly held. Rather, religion typically concerns ultimate ideas about life, purpose, and death. Social, political, or economic philosophies, as well as mere personal preferences, are not religious beliefs protected by Title VII.") (internal quotations omitted), aff'd, 877 F.3d 487 (3d Cir. 2017); *see also Wisconsin v. Yoder,* 406 U.S. 205, 215-16 (1972) (A religious belief is "not merely a matter of personal preference, but one of deep religious conviction, shared by an organized group, and intimately related to daily living."). Plaintiffs' Second Amended Complaint fails to make this showing and explicitly acknowledges that failure.

Plaintiffs' Second Amended Complaint alleges that Plaintiffs requested accommodations based on their sincerely held religious beliefs and expressed those beliefs to OSB. SAC ¶ 37. Yet, despite amending their complaint twice, Plaintiffs' pleading is completely devoid of any identification of what those beliefs are.  Plaintiffs candidly acknowledge that "a recitation of [those] beliefs is not included in this Complaint." SAC ¶ 37, fn.2.  In fact, Plaintiffs allege, without

6

citation to any authority, that "requiring Plaintiffs to explain their religious beliefs [is] highly intrusive," and that "Plaintiffs never should have been forced to divulge their personal beliefs to OSB." Plaintiffs' strategic choice to leave out their religious beliefs was done at their own peril. *Id.*  Plaintiffs' position stands in stark contrast to the Third Circuit's precedent which directs that "Title VII . . . require[s] . . . the courts to evaluate [plaintiffs'] claimed entitlement to accommodation of [their] religious principles." *Protos v. Volkswagen of Am., Inc.,* 797 F.2d 129, 136 (3d Cir. 1986); *see also Africa v. Pennsylvania,* 662 F.2d 1025, 1031 (3d Cir. 1981).  Such refusals to allege religious beliefs have been held to be "little more than a declaration that Plaintiff has the right to make his own decisions" and "do not constitute religious beliefs." *Friend v. Astrazeneca Pharm. LP*, No. SAG-22-03308, 2023 U.S. Dist. LEXIS 83749, at *7-8 (D. Md. May 11, 2023). Courts in this District have also noted that a "passionate objection to wearing masks" is not the sort of comprehensive system of beliefs addressed to "fundamental and ultimate questions having to do with deep and imponderable matters" that constitutes a sincere religious belief. *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, Civil Action No. 21-cv-4024, 2021 U.S. Dist. LEXIS 183966, at *16 (E.D. Pa. Sep. 27, 2021) (J. Goldberg).  Without any allegations of the Plaintiffs' alleged beliefs, this Court has been provided with nothing from which an inference can be drawn showing that those beliefs exist, that they constitute a complete system religious belief, or that the beliefs are sincerely held.  This failure is fatal to Plaintiffs' pleading.

Plaintiffs provide no factual allegations whatsoever as to the nature of their various belief systems[3], making their religious discrimination claims ripe for dismissal. *Prewitt,* 2012 WL 4364660, at *8; *see also Brown-Eagle v. County of Erie,* Civ. No. 12-314, 2013 WL 5875085, at

---

[3] The idea that all six Plaintiffs hold the exact same beliefs seems highly suspect, but without any factual allegations or details supporting their assertions of a sincere religious belief it is unclear what, if any, commonality exists between those purported beliefs.

*6 (W.D. Pa. Oct. 30, 2013) (dismissing plaintiff's claim of religious discrimination where plaintiff failed to include sufficient allegations to explain his alleged sincerely held religious belief). Indeed, it is not even clear from the Second Amended Complaint whether all six Plaintiffs hold the same or different religious beliefs, making it impossible to determine whether those beliefs are sincerely held, whether they are religious beliefs or preferences, and what accommodations might be reasonable in light of those beliefs.  In fact, the only allegations in the Second Amended Complaint that appear to explain Plaintiffs' hesitancy in obtaining the COVID-19 vaccine are those which take issue with the alleged inefficacy of the vaccine in preventing or reducing transmission of the disease, which is more akin to a personal preference than a religious belief as intended by the statutes. *See SAC* ¶¶ 14-19, 67; *Winans v. Cox Auto., Inc.*, No. CV 22-3826, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023) (dismissing plaintiff's claim for religious discrimination relating to COVID-19 vaccine because Complaint only contained " purely scientific, personal, and medical objections to the vaccine, including his belief that the vaccine is ineffective and his concerns with its potential side effects."); *Federoff v. Geisinger Clinic*, 571 F. Supp. 3d 376, 387 (M.D. Pa. 2021) (denying preliminary injunction and finding employees were unlikely to succeed on the merits of their claim that their sincere religious beliefs conflicted with employer's policy because employees filings contained no information about their religious beliefs and focused on the science of testing and its potentially harmful health effects); *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (employee's belief "she has a God given right to make [her] own choices"-which, implicitly, her employer must unfailingly respect-would amount to a blanket privilege and a limitless excuse for avoiding all unwanted . . . obligations. Though fungible enough to cover anything that [the employee] trains it on, this belief is an isolated moral teaching . . . not a comprehensive system of beliefs about fundamental or

ultimate matters" and "beyond that, her statement only reinforced that opposition stemmed from her medical beliefs.") (internal quotations omitted); *Tipcke v. Olmsted Med. Ctr.*, No. 22-2470 ADM/JFD, 2023 U.S. Dist. LEXIS 58793, at *7 (D. Minn. Apr. 4, 2023) (dismissing complaint where Plaintiff alleged only that "she was discharged for failing to comply with [a COVID-19 vaccination] policy that applied to all employees.").

Plaintiffs have failed to allege any facts regarding their beliefs, let alone facts that would allow for the reasonable inference that their concerns (1) "addresses fundamental and ultimate questions having to do with deep and imponderable matters;" (2) "consist of a belief-system" that is "comprehensive in nature ... as opposed to an isolated teaching;" or (3) are marked "by the presence of certain formal and external signs." *Africa*, 662 F.2d at 1032. Thus, Plaintiffs have failed to adequately allege that they have a sincerely held religious belief that could support a claim for religious discrimination under either Title VII or the PHRA, and their claims of religious discrimination in Counts I and II of the Second Amended Complaint should be dismissed.

               b)      Plaintiffs' requested accommodation would have imposed an undue burden on OSB because it would have increased the risk of transmitting COVID-19 to a vulnerable student population and other employees.

Even assuming, *arguendo*, that Plaintiffs sufficiently allege a sincere religious belief, the nature of the requested accommodation (exempting Plaintiffs from the vaccine mandate) would have caused an undue hardship for OSB and put its students and employees at increased risk of contracting COVID-19.  *See* SAC at ¶ 41.

There are limitations to an employer's obligations to accommodate an employee's beliefs. For example, employers are not required to create a position to accommodate an employee's beliefs. *See e.g. Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 83, 97 S.Ct. 2264, 2267

(1977) (stating that the employer "was not required by Title VII to carve out a special exception to its seniority system in order to help [the plaintiff] to meet his religious obligations").

Plaintiffs suggest that OSB should have exempted Plaintiffs from OSB's mandatory vaccination policy. But Title VII does not "require employers to accommodate an employee's religious practices in a way that spares the employee any cost whatsoever." *Pinsker v. Joint Dist. No. 28J of Adams & Arapahoe Ctys.*, 735 F.2 388, 390–91 (10th Cir. 1984). An employer does not need to provide an accommodation that would present an undue hardship. *See Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1109 (D. Colo. 2021). An accommodation constitutes an undue hardship "'if it would impose more than a *de minimis* cost on the employer.'" *Robinson v. Children's Hosp. Boston*, CV 14-10263-DJC, 2016 WL 1337255, at \*8 (D. Mass. Apr. 5, 2016) (*quoting Cloutier, v. Costco Wholesale Corp.*, 390 F.3d 126, 134 (1st Cir. 2004) (*citing Hardison*, 432 U.S. at 84).

Here, Plaintiffs' unvaccinated status could have exposed co-workers and vulnerable, disabled students to a heightened risk of COVID-19, constituting an undue burden, especially considering that caring for the well-being of those students constitutes the core of OSB's mission. Courts across the Country agree that exposing employees to heightened risk of COVID-19 constitutes an undue burden. In *Barrington*, the employee claimed that his Christian religious beliefs prevented him from taking the COVID-19 vaccine, and requested a religious accommodation. *See Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 521 (6th Cir. 1975) (noting that "safety considerations are highly relevant in determining whether a proposed accommodation would produce an undue hardship on the employer's business" and that "Title VII does not require that safety be subordinated to the religious beliefs of an employee"). The employer in *Barrington* denied the accommodation on the ground that the accommodation would present an

undue hardship by exposing its employees to a "heightened risk of COVID-19," and therefore placed the employee on unpaid leave. *Id.* The employee sought a preliminary injunction enjoining the employer from placing the employee on leave. *Id.* Denying the employee's request for injunctive relief, the court held that the employee was unlikely to succeed on the merits of his claim, as the employee's unvaccinated status created a "heightened risk of COVID-19" which was adequate to establish an undue hardship on the employer. *Id.*

Similarly, in *O'Hailpin v. Hawaiian Airlines, Inc.*, the United States District Court for the District of Hawaii held that the employer "persuasively demonstrate[ed] that accommodating Plaintiffs['] [religious beliefs] would cause undue hardship" by increasing the risk that the unvaccinated employee would pose while in close quarters to other individuals. *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1310 (D. Haw. 2022), *appeal dismissed*, No. 22-15215, 2022 WL 3339844 (9th Cir. July 13, 2022). *See also, e.g. Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 435 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022) (denying temporary injunction finding that providing reasonable accommodations, including masking, testing, and social distancing to unvaccinated employees who were denied religious exemption to a COVID-19 vaccine mandate would have caused undue hardship); *Robinson v. Children's Hosp. Bos.*, No. CV 14-10263-DJC, 2016 WL 1337255, at *8 (D. Mass. Apr. 5, 2016) (finding that undue hardship exists under circumstances that "compromise . . . the health and safety of the public," and therefore an employer need not provide an accommodation that would "either cause or increase safety risks or the risk of legal liability for the employer."); *Prince v. Massachusetts,* 321 U.S. 158, 166- 67, n.12 (1944) (noting that the right to practice one's religion freely "does not include liberty to expose the community . . . to communicable disease.");  *Does 1-6 v. Mills*, 16 F.4th 20, 36 (1st Cir. 2021), *cert. denied sub nom. Does 1-3 v. Mills*, 212 L. Ed. 2d 9, 142 S. Ct. 1112 (2022)

(plaintiff's requested religious accommodation would present an undue hardship where the employer, a hospital, could not effectively lower the risk of COVID-19 without mandating vaccines for its employees.)

The EEOC's guidance on religious accommodations in relation to COVID-19 is also instructive. The EEOC notes that "[t]he Supreme Court has held that requiring an employer to bear more than a 'de minimis,' or a minimal, cost to accommodate an employee's religious belief is an undue hardship. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business—including, in this instance, *the risk of the spread of COVID-19 to other employees or to the public.*" EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, Section L.3 (May 10, 2022) (emphasis added).[4] The EEOC states that, in assessing an undue hardship during the COVID-19 pandemic, "Certain common and relevant considerations . . . include, for example, whether the employee requesting a religious accommodation to a COVID-19 vaccination requirement . . . has close contact with other employees or members of the public (especially medically vulnerable individuals)." *Id.*  Here, Plaintiff Yazujian worked in the OSB kitchen and the other five Plaintiffs were paraeducators who worked in classrooms with students. *See* SAC at ¶ 24.  All of the Plaintiffs therefore had direct contact with students and coworkers while performing their jobs and their unvaccinated status would have increased the risk of spread of COVID-19. These concerns are even more heightened when dealing with a vulnerable population of disabled children. *See* CDC

---

[4] The EEOC Guidance may be found at the URL: https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

COVID-19 Guidance, "*People with Certain Medical Conditions*"[5]   The CDC notes that people with certain types of disabilities are more likely to get very sick from COVID-19.  *Id.*  Those more likely to get very sick include "[p]eople with any type of disability that makes it more difficult to do certain activities or interact with the world around them, including people who need help with self-care or daily activities" and those with "developmental disabilities". *Id.*  As OSB's Mission is to "develop and deliver education that enhances the options available for persons with visual impairments, including those with additional challenges, so that they have the greatest opportunity to experience active and fulfilling lives" requiring OSB to put those vulnerable children at risk of severe illness would be a severe imposition and an undue hardship under any conceivable standard.

In sum, the accommodations sought by Plaintiffs would have constituted an undue hardship that OSB was not required to bear and the religious discrimination claims in Counts I and II should be dismissed.

2.      **Plaintiffs' Complaint Fails to State a Claim for Relief for Race Discrimination under Title VII, the PHRA, and Section 1981 (Counts III, IV, and V)**

Plaintiffs allege that OSB terminated Righteous, Lee, Jones, Holland and Dunson, who are all African American (SAC ¶¶ 3-7) not because they violated an OSB policy, but because of their race. SAC ¶ 2. Plaintiffs further allege that OSB fired Yazujian, who is Caucasian (SAC ¶ 8) not because she violated an OSB policy, but because she is white and OSB was trying to cover up race discrimination. SAC ¶ 92.  Finally, Plaintiffs allege that OSB's refusal to rehire Plaintiffs was because of race, despite the fact that not all of the six were the same race. SAC ¶ 93. Because

---

[5] The CDC Guidance document may be found at the URL:
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Plaintiffs have not plausibly alleged facts that support a prima facie case of race discrimination, those claims in Counts III and IV should be dismissed.

To plead a *prima facie* case of disparate treatment race discrimination, the employees must allege that: (1) they belong to a protected class; (2) they were performing their jobs at a level that met his employer's legitimate expectations; (3) they suffered adverse employment actions; and (4) others not within the protected class did not suffer similar adverse employment actions. *Kimber-Anderson v. City of Newark*, 502 F. App'x 210, 212 (3d Cir. 2012). For the purposes of this motion only, OSB does not dispute that Righteous, Lee, Jones, Holland and Dunson have pled the first three elements. However, Plaintiffs have, in fact, pled allegations that disprove the fourth element that "others not within that protected class did not suffer similar adverse employment actions." *Id*.

*Here, the allegations not only do not support such a finding, they lead to the opposite conclusion – namely that the policy is both facially neutral and applied in a neutral manner.* The only facts that have been pled here are that six different people – five African American and one Caucasian – were terminated for failing to comply with OSB's COVID-19 vaccination policy. Plaintiffs have not only not alleged that similarly situated employees outside the protected class were treated differently, they have in fact alleged that the five African American Plaintiffs were treated *exactly the same* as the Caucasian Plaintiff who violated the same neutral policy. Indeed, Plaintiffs' prior Amended Complaint, also noted that one African American employee, Kevin Lewis, was provided an accommodation because, given the nature of his job, it was possible to allow him to work on a different shift without interacting with students or other employees. AC ¶¶ 9, 51. The facts presented to the Court are therefore that African American employees were both accommodated and not accommodated, and one Caucasian employee was terminated along with five African American employees. There is simply no suggestion of discriminatory animus

14

in these allegations. Absent allegations that other employees engaged in similar conduct (i.e. refused to comply with the mandatory vaccination policy) without facing similar consequences, the circumstances surrounding Plaintiffs' termination simply does not support an inference of discrimination. The only inference this court can make from the Second Amended Complaint as pled is that OSB undertook a neutral, non-discriminatory application of a neutral policy. While Plaintiffs assert that Yazujian was fired as a cover up, they pled no facts whatsoever to support that conclusion, and the Court should disregard that conclusory allegation.

Further, Plaintiffs' claim that OSB's vaccine mandate is inherently racially discriminatory is not supported by law and has been rejected by other Courts. In *Bravo v. De Blasio*, the petitioners were Black individuals seeking a permanent injunction against New York's vaccine law. *See Bravo v. De Blasio*, 167 N.Y.S.3d 708, 711 (N.Y. Sup. Ct. 2022). The law prohibited employees from entering indoor establishments unless vaccinated. *Id.* The petitioners argued that the vaccine law disproportionately affected Black people, many of whom were traditionally hesitant to vaccines. *Id.* at 715. The court denied the request for injunctive relief, explaining that the vaccine law was not discriminatory where "all races have equal access to the vaccine and the vaccine mandate is equally applicable to all races." *Id.* at 718. The court further noted the vaccine law's importance in protecting the public by mitigating the spread of COVID-19. *Id.* Like the vaccine law upheld in *Bravo*, OSB's vaccine policy is equally applicable to all employees, irrespective of race. *See id.* (finding that the vaccine requirement was not discriminatory where the policy was "equally applicable to all races."). Moreover, while Plaintiffs' make a number of allegations relating to the Black community's "vaccine hesitancy," *Bravo* found such an argument to have little merit in its determination that a vaccine law was not discriminatory. *Id.* at 715.

"Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006).  For purposes of this motion only, Defendant does not dispute that Plaintiffs' employment constitutes a contract and that they have therefore pled that element.  Defendant does, however, dispute that Plaintiffs have not pled any facts supporting an inference that race discrimination played any part in their terminations.  "To prevail [on a Section 1981 claim], a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. ___, 140 S. Ct. 1009, 1019, 206 L.Ed.2d 356, 368 (2020).  "Under this standard, a plaintiff must demonstrate that, but for the defendant's  unlawful conduct, its alleged injury would not have occurred."  *Id.* at 1014, 206 L.Ed.2d at 361-62.  That standard is ultimately fatal to Plaintiffs' claims here as the Plaintiffs acknowledge that Yazujian, a Caucasian employee, was terminated from employment in the same manner, at the same time, and for the same policy violation as the five African American Plaintiffs, and therefore race was not the but for cause of their terminations.

In conclusion, the Plaintiffs have not successfully pled plausible allegations that support claims of race discrimination under Title VII, the PHRA, or Section 1981. The factual basis set forth falls short of suggesting any discriminatory intent or actions by OSB based on race, and in fact pleads that employees of different races were treated exactly the same with regard to the vaccine mandate. Further, courts have already determined that a vaccine mandate is not discriminatory where all races have equal access to the vaccine and the mandate is equally applicable to all races as it was here.  Plaintiffs have therefore failed to state a claim for relief for

race discrimination under either Title VII or the PHRA and the court should dismiss the race discrimination claims in Counts III,  IV, and V of Plaintiffs' Second Amended Complaint.

### 3.    Plaintiffs' Second Amended Complaint Fails to State a Claim for Relief for Disability Discrimination under the Americans with Disabilities Act or the PHRA (Counts VI and VII)

In Counts VI and VII, Plaintiffs purport to set forth claims for disability discrimination under both the Americans with Disabilities Act and the Philadelphia Human Rights Act. Plaintiffs claim that OSB regarded them as being disabled with COVID-19 and as though Plaintiffs were permanently likely to infect coworkers and students because they were unvaccinated, thereby discriminating against them under the Americans with Disabilities Act. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  The ADA protects only those employees who are disabled by virtue of a "physical or mental impairment that substantially limits one or more major life activities of such individual," and those who are "regarded as" having such a disability. 42 U.S.C. § 12102(1).

To prevail on a "regarded as" disability discrimination claim under the ADA, Plaintiffs must show that they either (1) have a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation; (2) have a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) have [no such impairment] but are treated by a covered entity as having a substantially limiting impairment. *See Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 434 (3d Cir. 2009).

In addition to prohibiting disparate treatment on the basis of an employee's disability, the ADA also requires employers to provide reasonable accommodations to otherwise qualified individuals with disabilities. *See* 42 U.S.C. § 12112(b)(5)(A) (reasonable accommodation).

a)   Plaintiffs have not Alleged Facts Sufficient to Show that they were Disabled or that OSB Regarded Them as Disabled.

Plaintiffs have not alleged that they suffer from a "physical or mental impairment that substantially limits one or more major life activities." Nor have they alleged that they have a "record of such an impairment." While the Second Amended Complaint pleads the label of actual disability, there are no facts pled which even identify a disability for any one of the Plaintiffs, let alone assert that such a disability imposed a limitation on any of the Plaintiffs' major life activities. Rather, Plaintiffs' discrimination claim is based solely on the notion that OSB regarded them as being disabled with COVID-19 and as though Plaintiffs were permanently likely to infect coworkers and students because they were unvaccinated. SAC ¶¶ 47, 120, 128.

Plaintiffs have not alleged that OSB considered them "impaired" at all. Instead, they allege the OSB regarded them as "disabled" or "permanently sick and contagious" because they were unvaccinated and "permanently likely to infect coworkers and students." SAC ¶¶ 47, 120, 128. To suggest that the mere state of being healthy and unvaccinated is a "physical or mental impairment" within the scope of 42 U.S.C. § 12102(1) turns the statutory language on its head. If accepted, this logic would lead to the conclusion that every unvaccinated person in the United States is now "disabled" under the ADA, a notion which cannot be reconciled with the history and purpose of the ADA. *See, e.g., Hice v. Mazzella Lifting Techs., Inc.,* 589 F. Supp. 3d 539, 549–50 (E.D. Va. 2022) (holding that "possible future exposure to COVID-19 [based on age] does not constitute an impairment under the ADA"); *Jorgenson v. Conduent Transp. Sols., Inc.,* No. 22-cv-01648 (SAG), 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) (ruling that the employer's "decision to protect its

18

workplace by requiring its employees to attest to their vaccination status—and in some cases, to wear masks—does not plausibly reflect a determination or belief that any of its employees are disabled or impaired"); *Shklyar v. Carboline Co.,* No. 22-cv-391 (RWS), 2022 WL 2867073, at *5 (E.D. Mo. July 21, 2022) (reasoning that "to infer that [an employer] regarded [an employee] as having a disability" based on a "generally applicable" COVID-19 mitigation policy "would require inferring that [the employer] regarded all of its . . . employees as having a disability"), *aff'd,* No. 22-2618, 2023 WL 1487782 (8th Cir. Feb. 3, 2023); *Leggo v. M.C. Dean, Inc.,* No. 22-cv-374 (LMB/IDD), 2023 WL 1822383, at *4 (E.D. Va. Feb. 7, 2023) (holding the same and citing *Jorgenson* and *Shklyar); Johnson v. Tyson Foods, Inc.,* No. 21-cv-01161, 2023 U.S. Dist. LEXIS 100082, at *11 (W.D. Tenn. June 8, 2023)( "…Plaintiff has failed to allege a cause of action in Claim Seven because Plaintiff has not shown that her unvaccinated status equates to an actual or perceived disability.")

The "regarded as" prong of the ADA's definition of disability "does not cover [a] case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future." *EEOC v. STME, LLC,* 938 F.3d 1305, 1315 (11th Cir. 2019). The impairment must "exist at the time of the adverse employment action," and so the statute "does not [reach] impairments that manifest after the alleged discrimination." *Id.* Here Plaintiffs have not pled any facts to support the notion that OSB perceived Plaintiffs as having COVID-19 at the time of their terminations. Rather, the concern underlying OSB's policy was that, as unvaccinated persons, Plaintiffs were more likely to contract and spread COVID-19 in the future and, at that future time, endanger the health of those around them. SAC ¶¶ 27, 39.

In fact, even if Plaintiffs had contracted COVID-19, the mere fact of having contracted COVID-19 is not, by itself, an "impairment" within the meaning of the ADA. Instead, COVID-19

19

may qualify as a disability only if the employee's symptoms are sufficiently long-lasting and sufficiently severe to constitute an "impairment that substantially limits one or more major life activities" of the individual. *See* EEOC Guidance, *"What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws"[6],* § N.6 (a person does not have a disability as a result of COVID-19 if "the actual or perceived impairment is objectively both transitory (lasting or expected to last six months or less) and minor")[7]; *see also Baum v. Dunmire Prop. Mgmt.,* 2022 WL 889097, at *5  (D. Col., Mar. 25, 2022); *Cupi v. Carle Bromenn Med. Ctr.,* 2022 WL 138632, at *4 (C.D. Ill., Jan. 14, 2022); *Champion v. Mannington Mills, Inc.,* 538 F. Supp. 3d 1344, 1348 (M.D. Ga. 2021).

Plaintiffs have failed to plead sufficient allegations to state claim that they were disabled or that OSB regarded them as disabled. Accordingly, the claims for disability discrimination under the ADA and the PHRA fail as a matter of law and should be dismissed.

b)      Even if Plaintiffs were qualified individuals, Plaintiffs' requested accommodation would have imposed an undue hardship on OSB and posed a direct threat to OSB's staff and vulnerable student population.

Even if Plaintiffs establish they are qualified individuals, they still must establish that they could have been reasonably accommodated. *Capps v. Mondelez Glob*., LLC, 847 F.3d 144, 157 (3d Cir. 2017). Because providing Plaintiffs an exemption from the COVID-19 vaccination policy

---

[6]    The  EEOC  Guidance  document  may  be  found  at  the  URL: https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

[7] The Court may take judicial notice of and consider the EEOC guidance on this motion without converting it into a motion for summary judgment.  *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998) (holding that the recounting of the averments of the pleadings may be informed by documents and other public records of which the court can take judicial notice); *Gonzalez v. Napolitano*, No. 2:09-cv-03426, 2011 U.S. Dist. LEXIS 27053, at *15 (D.N.J. Mar. 16, 2011) ("The Court may take judicial notice of [] public government records.") (citing Fed. R. Evid. 201(b)(2)).

would have imposed an undue hardship, Plaintiffs' claim for failure to accommodate fails and should be dismissed.

An accommodation is unreasonable if it imposes an undue hardship on the employer. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010). The undue hardship inquiry must take into account the context of the particular employer's business and the nature of operations, and should include considerations like health and safety. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402, 122 S. Ct. 1516, 1523, 152 L. Ed. 2d 589 (2002); *See* EEOC, What you should know about COVID-19 and the ADA, The Rehabilitation Act, and other EEO Laws, § L (stating that costs include "the burden on the conduct of the employer's business – including, in this instance, the risk of the spread of COVID-19 to other employees or to the public").[8]  In determining undue hardship, it is appropriate to consider aggregate effects when multiple employees are granted the same accommodation. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 n.15, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) (interpreting undue hardship provision of Title VII's religious accommodation provisions).

Courts agree that providing a COVID-19 vaccination exemption would be an undue hardship for various reasons, including the increased risk of spreading COVID-19 to coworkers and vulnerable individuals. *Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 435 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022) (agreeing that the heightened risk of COVID-19 would impact the employer's responsibility to protect patients, staff and visitors and that alternatives to vaccines such as social distancing, masking and testing would impose an undue hardship); Does 1-6 v. Mills, 16 F.4th 20, 36 (1st Cir. 2021), *cert. denied sub nom. Does 1-3 v.*

---

[8] The EEOC Guidance may be found at the URL:
https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

*Mills*, 212 L. Ed. 2d 9, 142 S. Ct. 1112 (2022) ("The hospitals need not provide the exemption the appellants request because doing so would cause them to suffer undue hardship."); *Robinson v. Children's Hosp. Bos.*, No. CV 14-10263-DJC, 2016 WL 1337255, at *8 (D. Mass. Apr. 5, 2016) (undue hardship exists under circumstances that "compromise . . . the health and safety of the public," and therefore an employer need not provide an accommodation that would "either cause or increase safety risks or the risk of legal liability for the employer."). Here, OSB sought to mitigate the risk of COVID-19 on its campus, noting that "[v]accination is the key prevention strategy to . . . diminish the threat to vulnerable individuals." SAC ¶ 27. Providing the exemption to Plaintiffs would have compromised the health and safety of OSB's employees and vulnerable student population. No such accommodation was warranted due to the undue hardship it would have caused.

Plaintiffs' refusal to vaccinate also shows a reckless disregard for the safety of their fellow workers and the vulnerable student population by putting others in greater danger of contracting COVID-19. "[A]n employer is not required to provide a reasonable accommodation if it . . . would pose a 'direct threat' to the safety of the employee or others." 29 C.F.R. § 1630.15(b)(2); *See also Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 78-79 (2002); *Buskirk v. Apollo Metals*, 307 F.3d 160, 168 (3d Cir. 2002). The EEOC has determined that at the time OSB implemented its vaccine mandate the coronavirus pandemic presented a direct threat to health in the workplace. *See* Pandemic Preparedness in the Workplace and the Americans with Disabilities Act[9] ("Based on guidance of the CDC and public health authorities as of March 2020, the COVID-19 pandemic meets the direct threat standard.").

---

[9] The EEOC Guidance may be found at the URL:
https://www.eeoc.gov/laws/guidance/pandemic-preparedness-workplace-and-americans-disabilities-act

4. **Plaintiffs' Second Amended Complaint Fails to State a Claim for Relief for Retaliation under Title VII, the ADA, GINA or the PHRA (Counts I, II, II, IV, VII, and VIII)**

Plaintiffs' retaliation claims should be dismissed because they have failed to plead a *prima facie* case as defined in the law.

> To establish a *prima* facie case of retaliation under Title VII, a plaintiff must tender evidence that:
> (1) she engaged in activity protected by Title VII;
> (2) the employer took an adverse employment action against her; and
> (3) there was a causal connection between her participation in the protected activity and the adverse employment action.

*Moore v. City of Philadelphia*, 461 F.3d 331, 340-341 (3d Cir. 2006)[10] (citation omitted).

For purposes of this motion only, the Defendants do not dispute that the Plaintiffs' terminations were adverse employment actions and that Plaintiffs' filing charges with the EEOC constituted protected activity. Plaintiffs, however, have not pled facts to support the third element of their *prima facie* case, namely that OSB failed to rehire them because they filed a charge of discrimination with the EEOC.

Plaintiffs fail to allege in any way beyond conclusory assertions and labels that OSB failed to rehire them *because of* their filing charges of discrimination with the EEOC. Plaintiffs do not allege that other employees who were terminated for refusing to comply with the vaccine mandate, but who did not file charges with the EEOC, were rehired.

Similarly, Plaintiffs do not allege any statements were made by OSB suggesting any animus as a result of their, filing of the charges. In essence, Plaintiffs' claim of retaliation amounts to an assertion that simply because they filed charges, OSB was obligated to rehire them and that

---

[10] GINA, the ADA, and PHRA apply the same standards as Title VII for retaliation claims. 42 U.S. Code § 2000ff–6(f), 42 U.S.C. § 12203(a); 43 Pa. Cons. Stat. § 955(d) (2020), *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

the failure to do so is *ipso facto* retaliation.  Like the plaintiff in *Moore*, Plaintiffs are not entitled

to such an inference.  "[F]or subsequent actions taken against [plaintiff] to be actionable, there

must be an independent basis for the inference of retaliatory animus." *Id*.

In this case, Plaintiffs have pled absolutely no facts from which it could be inferred that

their filing of charges with the EEOC was in any way connected to OSB's failure to rehire them.

As a result, Plaintiffs fail to state a *prima facie* case of retaliation in violation of Title VII, the

ADA, GINA, or the PHRA and their claims for retaliation in Counts I, II, III, IV, VI, and VIII

should be dismissed.

### 5. Plaintiffs' Second Amended Complaint Fails to State a Claim for Relief for Genetic Information Discrimination under GINA (Count VIII)

Plaintiffs contend that because some, but not all, of the COVID-19 vaccines contain

messenger RNA, that terminating an employee for failure to receive such a vaccine is genetic

information discrimination.  Unfortunately for Plaintiffs, that assertion is inconsistent with the

plain language of the statute.  Specifically, GINA makes it unlawful for an employer to "request,

require, or purchase genetic information with respect to an employee." 42 U.S.C. § 2000ff-1(b).

"Genetic information" is defined as "information about (i) [an employee's] genetic tests, (ii) the

genetic tests of family members of [an employee], and (iii) the manifestation of a disease or

disorder in family members of [an employee]." 42 U.S.C. § 2000ff(4)(A).  Plaintiffs do not specify

which definition of genetic information they contend OSB requested, required or purchased.  The

Plaintiffs do, however, contend that because messenger RNA "tells your body how to make

proteins" taking the vaccines results in "manipulating that person's genetic information" and

causes people who have been vaccinated to "possess different genetic material" than those who

did not take the vaccine.  SAC ¶¶ 137-138, 141.  As an initial matter, messenger RNA vaccines

were not the only COVID-19 vaccines available[11], and Plaintiffs have not pled that they were

required by the policy to receive a messenger RNA vaccine, because they were not.  Therefore,

even based on Plaintiffs' assertions, there was no discrimination based on genetic information.

Further, the EEOC has already determined that requiring employees to be vaccinated does

not violate GINA.  "The act of administering a COVID-19 vaccine does not involve the use of the

employee's genetic information to make employment decisions or the acquisition or disclosure of

genetic information and, therefore, does not implicate Title II of GINA."  What You Should Know

About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, *supra*, § K.14.

Similarly, requiring proof of vaccination does not violate GINA.  *Id.* at § K.15 ("An employer

requiring an employee to show documentation or other confirmation of vaccination from a health

care provider unaffiliated with the employer, such as the employee's personal physician or other

health care provider, a pharmacy, or a public health department, is not using, acquiring, or

disclosing genetic information and, therefore, is not implicating Title II of GINA.")

Accordingly, Plaintiffs' genetic information discrimination claim under GINA in Count

VIII should be dismissed.

**B.      In the Alternative, Plaintiffs' Allegations Pertaining to Hyperlinked
Newspaper Articles are Immaterial, Impertinent, and Scandalous and
Should be Stricken**

Plaintiffs' Second Amended Complaint contains hyperlinks to news articles and materials

that are irrelevant and prejudicial.  Specifically, Paragraphs 14-18 consist of Plaintiffs'

interpretation of media reports and incorporate hyperlinks to selectively chosen articles

---

[11]  *See* CDC explanation of different types of COVID-19 vaccines (available at:
https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/how-they-
work.html#:~:text=Viral%20vector%20COVID%2D19%20vaccines%20are%20given%20in%2
0a%20muscle,but%20a%20different%2C%20harmless%20virus).  Information on the Center for
Disease Control's website is subject to judicial notice.  *Brown v. Fed. Express Corp.*, 62 F. Supp.
3d 681, 687 (W.D. Tenn. 2014).

(Paragraphs 16 (NYT), 17 (CNN), 19 (NPR, Modern Heretic) concerning vaccine efficacy and vaccine hesitancy. These paragraphs should be stricken in their entirety.

Rule 12(f) of the Federal Rules of Civil Procedure provides, in part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). Although motions to strike are generally disfavored, the Court "enjoys wide discretion …to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial." *Haley Pain Co. v. E.I. Du Pont de Nemours & Co.*, 279 F.R.D. 331, 335 (D. Md. 2012); *see also Godfredson v. JBC Legal Group*, P.C., 387 F. Supp. 2d 543, 547 (E.D.N.C. 2005) (quoting Wright and Miller, 5C Federal Practice and Procedure § 1382) ("The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike.").

While motions to strike are generally disfavored, the "disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the subject of the allegations." Charles A. Wright and Arthur R. Miller, 5A Federal Practice and Procedure 2d § 1382, at 714 (1990). In fact, the relief provided in Rule 12(f) need not be granted only upon motion of a party; consistent with the Court's inherent powers to protect the decorum of proceedings before it, the Court may strike such material *sua sponte.* Fed. R. Civ. P. 12(f); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

By linking the articles to the Second Amended Complaint, Plaintiffs have, in essence, attached the articles as exhibits to their pleading. Federal Rule of Civil Procedure 10(c), regarding

adoption by reference, provides in relevant part: "A copy of a written instrument that is an exhibit

to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). However, courts

have found that "newspaper articles [and] commentaries ... are not the type of documentary

evidence or 'written instrument[s]' which [Rule 10(c) ] intended to be incorporated into, and made

a part of, the complaint." *Perkins v. Silverstein*, 939 F.2d 463, 467 n. 2 (7th Cir.1991) (citations

omitted); *see also Mart v. Forest River, Inc.*, No. 3:10cv118, 2011 WL 924289, at *3 (N.D. Ind.

2011) (noting that "newspaper articles are not written instruments"); *Murphy v. Cadillac Rubber

& Plastics, Inc.,* 946 F. Supp. 1108, 1115 (W.D.N.Y.1996) ("A 'written instrument' is a document

evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a

deed, will, bond, lease, insurance policy or security agreement."); *Rose v. Bartle,* 871 F.2d 331,

339 n. 3 (3d Cir.1989) ("The case law demonstrates, however, that the types of exhibits

incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence,

specifically, contracts, notes, and other 'writing[s] on which [a party's] action or defense is

based."). Further, courts have stricken hyperlinked news articles out of concern that the

hyperlinked matters are subject to editing or deletion from outside sources. *See e.g., Nabors v.

Lewis*, No. CV 6:17-2887-DCC-KFM, 2018 WL 7118008, at *3 (D.S.C. Feb. 16, 2018)

(Hyperlinked matters are subject to editing or deletion by outside sources).

The Second Amended Complaint also references correspondence between counsel related

to compromise negotiations and includes characterizations of OSB's counsel in this case.  Since

settlement communications are clearly inadmissible pursuant to Rule 408, the only purpose their

inclusion can possibly serve is to inflame a jury.  This is the very definition of impertinent material

that should be stricken pursuant to Rule 12.  *See Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527

(9th Cir. 1993), <u>*rev'd* on other grounds</u>, 510 U.S. 51 (1994) ("'Impertinent matter' consists of

statements that do not pertain, and are not necessary, to the issues in question.") (internal citations omitted).  Moreover, Courts in this District have granted motions to strike such allegations as immaterial.  *See Ciolli v. Iravani*, 625 F. Supp. 2d 276, 289 (E.D. Pa. 2009) (citing *Bergman v. Jefferson-Pilot Life Ins. Co.,* No. 03-4459, 2003 WL 23142155, at *1 (E.D. Pa. Dec. 30, 2003); *Scott v. Twp. of Bristol*, No. 90-1412, 1991 WL 40354, at *5 (E.D. Pa. Mar. 20, 1991); *Agnew v. Aydin Corp.*, No. 88-3436, 1988 WL 92872, at *4 (E.D. Pa. Sept. 6, 1988)).

The communications OSB seeks to exclude are well within the ambit of what Rule 12 and Rule 408 are designed to exclude, and therefore, Paragraphs 65-70 should be stricken from the record.  "The purpose behind Rule 408 is the 'promotion of the public policy favoring the compromise and settlement of disputes that would otherwise be discouraged with the admission of such evidence.'"  *Steak Umm Co., LLC v. Steak 'Em Up, Inc.,* No. 09–2857, 2009 U.S. Dist. LEXIS 101357, at *7 (E.D. Pa. Oct. 30, 2009) (quoting *Manko v. United States*, 87 F.3d 50, 54 (2d Cir.1996)).  Certainly, parties would be less likely to engage meaningfully in substantive compromise negotiations if they knew their communications were likely to end up as exhibits attached to pleadings that are filed on a public docket.

Due to the improper inclusion of hyperlinked articles, Plaintiffs' insertion of rhetoric and interpretation of the articles, characterizations of OSB's counsel, and reference to inadmissible settlement communications, the court should strike Paragraphs 14-18 and 65-70 of Plaintiffs' Second Amended Complaint as immaterial, impertinent and scandalous under Fed. R. Civ. P. 12(f).

## 5.   CONCLUSION

Despite amending their complaint twice, Plaintiffs have still failed to allege, beyond conclusory assertions and labels, facts that support any claim for relief.  Therefore, for the

foregoing reasons, Plaintiffs' Second Amended Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

COZEN O'CONNOR, P.C.


*/s/ Jeffrey I. Pasek*
Jeffrey I. Pasek, Esq. (PA 23700)
Christopher J. Kelly, Esq. (PA 325427)
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Phone: 215-665-2072
Fax: 215-701-2072
Email: jpasek@cozen.com

Dated:  June 20, 2023