**BRIAN J. FOLEY, Attorney at Law** (PA ID No. 68806)
6701 Germantown Avenue, Suite 200
Philadelphia, PA  19119
(267) 930-4425
*Attorney for Plaintiffs*

_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| **Divine Equality Righteous, et al.** | : |
| | : |
| Plaintiffs | :   CIVIL ACTION NO.  23-cv-846 |
| | : |
| v. | : |
| **Overbrook School for the Blind** | : |
| | : |
| Defendant | : |

---

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (Doc. 18)

PLAINTIFFS respectfully ask the Court to deny Defendant's motion to dismiss and strike (Doc. 18), because Plaintiffs' Second Amended Complaint (SAC) (Doc. 9) pleads plausible claims against Defendant for discrimination based on religion, race, and perceived disability. (Plaintiffs are withdrawing their genetic discrimination claim.)   In the alternative, Plaintiffs request leave to amend any deficiencies.  Defendant makes much of the fact that Plaintiffs amended their complaint twice; however, these amendments were not to change the substance of the complaints but merely to add, and then remove, an individual plaintiff from what is now a group of six plaintiffs. Both amendments were before Defendant's counsel entered an appearance.

### PROCEDURAL BACKGROUND AND COUNTERSTATEMENT OF FACTS

Plaintiffs filed the Complaint on March 6, 2023, (Doc. 1), alleging discrimination and retaliation under Title VII (religion, race), Section 1981, the Americans with Disabilities Act

(ADA), the Genetic Information Nondisclosure Act (GINA), and the Pennsylvania Human Relations Act (PHRA). On April 25, 2023, Plaintiffs filed an Amended Complaint, adding Kevin Lewis as a plaintiff including him in these claims and in additional state law claim for retaliation against him in violation of the Workers Compensation statute (Doc. 5). On May 9, Plaintiffs filed a motion under Rules 15 and 21 for leave to file a second amended complaint to remove Mr. Lewis as a party (Doc. 7), which this Court granted (Doc. 8). Counsel for Defendant had not entered an appearance, so Plaintiffs served the motion and SAC on Defendant via a professional process server (Doc. 12). Defendant filed the instant motion to dismiss (Doc. 18), per this Court's scheduling order, on June 20, 2023.

Plaintiffs will rely on Defendant's statement of facts, with the following exceptions:

Defendant omits key facts such as that three of the plaintiffs, to dissuade Defendant from firing them, sent Defendant information from the FDA, the United States Court of Appeals for the Fifth Circuit, the head of the CDC, legacy media, *et al.* showing notice that the Covid-19 vaccines did not prevent transmission, SAC ¶¶ 14-18, and that Black people were the most "vaccine hesitant" Americans, SAC ¶ 19. Defendant omits that it crafted its policy with such knowledge and that the intent of the policy was to discriminate against employees. SAC ¶ 36. Defendant omits its policy's statement that anyone who was not vaccinated and not accommodated would be deemed to have resigned voluntarily and that such styling of the termination was to coerce employees by making them believe they would be denied unemployment compensation. SAC ¶ 30. Defendant omits that *its* policy, unlike President Biden's OSHA policy, did *not* provide employees a choice between vaccination and regular testing, SAC ¶¶ 33-34, did not consider natural immunity and that Defendant did not ask Plaintiff whether they had acquired such immunity. *Id.* at 35, 62.

Defendant characterizes without warrant Defendant's informing each plaintiff that Defendant "did not question the sincerity of their religious beliefs," SAC ¶ 39, as Defendant "did

not *at the time* question the sincerity of the plaintiffs' religious claims." Deft. Br. at 11 (ECF pagination) (emphasis added). Defendant omits full mention of Plaintiffs' footnote explaining that they did not include their religious beliefs in the complaint "Because [Defendant] acknowledged the sincerity of Plaintiffs' religious beliefs," and because unnecessarily setting their beliefs forth in a public complaint could result in further religious discrimination against them, SAC ¶ 38, n. 2. Rather, Defendant tendentiously and falsely twists Plaintiffs' stated concern into an act of defiance and refusal based on medical, not religious, concerns. *See* Deft. Br. at 14-18. (Page references are to ECF pagination.)

Defendant describes its students as "vulnerable," which is not set forth in the SAC. *See, e.g.*, Deft. Br. at 18, 19, 21, 29, 30, 31. Defendant is a school for the blind, but blindness is not necessarily related to any special vulnerability to Covid-19 (and the vaccines would not prevent transmission). Defendant's claim is a red herring and is undercut by the fact that the only other school for the blind in Pennsylvania, Western Pennsylvania School for Blind Children, did not impose a vaccine mandate for its workers; nor did numerous other schools for the blind. SAC ¶¶ 10, 42.

Defendant omits that it helped the Caucasian employee it fired to obtain unemployment compensation but did not help the Black Plaintiffs, *see id*. at ¶ 55, and that it provided bonus money after termination to the Caucasian plaintiff but not to the Black plaintiffs. *Id*. at ¶ 56.

## ARGUMENT

Plaintiffs have alleged sufficient facts to withstand Defendant's motion to dismiss its claims for discrimination based on religion, race, disability, and for retaliation. (Plaintiffs withdraw their GINA claim.) In the alternative, Plaintiffs request leave to amend.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted).  A plaintiff must set forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[T]he "*prima facie* case is 'an evidentiary standard, not a pleading requirement." *Connelly v. Lane Const. Corp*., 809 F.3d 780, 789 (3d Cir. 2016). "Instead of requiring a *prima facie* case, the post-*Twombly* pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008) (quoting *Twombly*, 550 U.S. at 556).  "[A] claim of employment discrimination necessarily survives a motion to dismiss so long as the requisite *prima facie* elements have been established. That is so because "it may be difficult" for a plaintiff to prove discrimination "[b]efore discovery has unearthed relevant facts and evidence."  *Castleberry v. STI Grp*., 863 F.3d 259, 266 (3d Cir. 2017) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  Courts must construe "factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them, and that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits"). *Connelly*, 809 F.3d at 790–91 (cleaned up).

**A. The SAC Properly Pleads Religious Discrimination**

This Court should deny Defendant's motion, because Plaintiffs' SAC pleads a plausible *prima facie* case of religious discrimination -- and thus "necessarily survives" Defendant's motion to dismiss. *See Castleberry* 863 F.3d at 266. To plead a *prima facie* case of religious discrimination, Plaintiffs must allege facts showing that: (1) they hold a sincere religious belief that conflicts with a job

requirement; (2) they informed their employer of the conflict; and (3) they were disciplined for failing to comply with the conflicting requirement. *Fallon v. Mercy Cath. Med. Ctr.*, 877 F.3d 487, 490 (3d Cir. 2017).   "[T]task of a court at the motion to dismiss stage is to decide whether the facts alleged by the plaintiff support the reasonable inference that his beliefs are sincerely held and "in [the believer's] own scheme of things, religious." *Winans v. Cox Auto., Inc,* No. CV 22-3826, 2023 WL 2975872, at *3 (E.D. Pa. Apr. 17, 2023), (quoting *Fallon*).

All of the requirements are met. Defendant does not dispute the second or third elements. Regarding the first element, **sincerely held religious belief,** which Defendant now oddly disputes, only by ignoring the law (by making the *prima facie* case a pleading requirement) and the facts (by ignoring that *Defendant told the Plaintiffs it did not question their sincerely held religious beliefs*). Defendant's **undue burden** argument must be rejected because it is not appropriate for Rule 12(b)(6), and on top of that Defendant applies the wrong standard for undue hardship -- that any cost to the employer that is more than *de minimis* presents an undue hardship -- which the United States Supreme Court rejected two weeks ago in favor of a fact-specific inquiry requiring the employer to prove *substantial costs*. *See Groff v. DeJoy*, 2023 U.S. LEXIS 2790, at *28.

### 1. The SAC Properly Claims that Plaintiffs Have Sincerely Held Religious Beliefs

Plaintiffs have pled facts showing they will be able to prove (1) they hold a sincere religious belief that conflicts with a job requirement; (2) they informed their employer of the conflict; and (3) they were disciplined for failing to comply with the conflicting requirement. Defendant contests only the first requirement. However, Plaintiffs pled that, in response to their requests for religious accommodation from Defendant's requirement to be injected with novel COVID-19 vaccines to keep their jobs, *Defendant specifically told each Plaintiff that it was not contesting the sincerity of their religious beliefs*. SAC ¶¶ 37-40. The Court must construe the factual allegations as true, in a light most favorable to Plaintiffs, and draw all reasonable inferences, *see Connelly*, 809 F.3d at 790–91; therefore,

it is plausible, indeed *likely,* that Defendant did not question Plaintiffs' beliefs *because the beliefs were obviously "religious" and obviously "sincerely held."*

Similarly, the letter undersigned counsel wrote Defendant to dissuade it from firing Plaintiffs Dunson, Jones, and Yazujian did not address religious beliefs but regarded *only* the inanity of firing Plaintiffs for not taking a  drug that does not prevent infection transmission, a drug several other schools for the blind and many other institutions, including Congress, the U.S. Supreme Court, the White House, and many courts, did not require employees to take.  *See* SAC ¶¶ 41-44.   There was no mention of Plaintiffs' religious beliefs in the letter because *Defendant had already expressed* it saw them as both "religious" and "sincerely held."  SAC ¶¶ 37-38.

Likewise, the SAC's description of the "belated interactive process" supports that Plaintiffs' beliefs are religious and sincerely held, because the sole focus was accommodation. *See* SAC ¶¶ 66-70. The upshot was that Defendant proposed that an expert retained and paid by Defendant would determine whether the vaccines prevented or even reduced transmission. SAC ¶ 69. *Plaintiffs' religious beliefs were not subjected to any such challenge in this process;* Defendant did not suggest retaining an expert to determine whether Plaintiffs' beliefs were "religious" or "sincerely held." Accordingly, is plausible that discovery will show Plaintiffs meet this standard -- if Defendant chooses to continue pushing this argument. *See Twombly*, 550 U.S. at 556.

Notably, Defendant objects to the SAC's including the "belated interactive process"; Defendant calls it "compromise negotiations" and "settlement communications," and then claims that including such information in the pleading violates FRE 408 because it could only have been included "to inflame a jury." *See* Deft. Br. at 27-28.  Defendant's stridency is perhaps understandable, as the information is further potent evidence of Plaintiffs' religious beliefs and punctures Defendant's efforts for dismissal before discovery.

However, Defendant can make this dodgy argument only by twisting the facts and the law. The SAC nowhere uses the words or even cognates of "settlement" or "compromise" or "negotiation" or "discussion."  Contrary to Defendant's assertions, this evidence is *not in*admissible under FRE 408, as that rule, of course, prohibits admission regarding settlement discussions *only* when offered for carefully delineated purposes -- none of which applies here.  *See* F.R.E. 408. In fact, Rule 408 "is a rule of evidence and does not govern pleadings," *Steak Umm Co. LLC v. Steak Em Up, Inc.*, 2009 U.S. Dist. LEXIS 101357 (E.D.Pa. 2009). Material regarding settlement discussions should not be stricken from a complaint if it is relevant. *Id.* (rejecting defendant's motion to strike because settlement discussions showed defendant's state of mind).  Here, the information about the belated interactive process is relevant to show (1) Defendant did not challenge Plaintiffs' beliefs because the beliefs were obviously "religious," and (2) ***Defendant never engaged in any interactive process before firing Plaintiffs,*** and (3)  that this "belated" process was not carried out in good faith, given Defendant's suggestion to rely on an expert chosen, retained, and *paid* by Defendant to lend scientific credibility to an obviously unscientifically supportable conclusion.

In addition, after Defendant said it was not questioning Plaintiffs' beliefs but ordered them to get vaccinated or be fired, the Plaintiffs stuck to their convictions and *got fired.* SAC ¶¶ 45-47. Nor did they get injected to get rehired. *See id.* at ¶¶ 46, 49, 71. That Plaintiffs sacrificed their livelihood supports that their beliefs are ***sincerely held religious beliefs.***

### 2. Defendant's Contrary Arguments Are Misleading and Should be Rejected

There are more reasons for the Court to reject Defendant's argument that Plaintiffs' not setting forth their religious beliefs in chapter and verse in the complaint is somehow "fatal" to their claim. ***First,*** Defendant can only make this argument by twisting both the facts and the law. Defendant *never* addresses the fact Defendant said it did not question Plaintiffs' sincerely held religious beliefs but

simply **omits this inconvenient fact from its entire argument.** *See* Deft. Br. at 14-18.[1] Instead, Defendant characterizes Plaintiffs' not including their beliefs in the complaint as some sort of refusal by Plaintiffs, grounded solely on medical reasons and "personal preferences," *see* Deft. Br. at 16-18, which is false and inflammatory.

   **Second,** none of the cases Defendant cites addresses a situation where, as here, the employer told the plaintiff it was not questioning his beliefs. *See Africa v. Pennsylvania,* 662 F.2d 1025, 1031 (3d Cir. 1981) (concluding in a non-Title VII case that MOVE was not a religion); *Winans v. Cox Auto., Inc,* No. CV 22-3826, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023), at *1, *8 (plaintiff never applied for religious exemption to the Covid-19 vaccine requirement and court dismissed with leave to amend because plaintiff's counsel said she could supplement the complaint to set forth facts showing religious beliefs); *Friend v. Astrazeneca Pharm. LP,* 2023 US Dist. LEXIS 83749,  at *3 n. 1 (D. Md. May 11, 2023) (plaintiff never communicated any religious views to employer);[2] *Tipcke v.*

---

[1] Defendant even went so far as to rip this inconvenient fact out the footnote in the complaint explaining why the beliefs are not specifically included. The Plaintiffs' footnote states in part: *"Because OSB acknowledged the sincerity of Plaintiff's religious beliefs,* a recitation of these beliefs is not included in this Complaint." SAC at page 10, para 38, fn. 2 (emphasis added).  **Defendant misleading recast the footnote as:** "Plaintiffs candidly acknowledge that 'a recitation of [those] beliefs is not included in this Complaint.'  SAC ¶ 37, fn.2" – removing that important clause. Deft. Br. at EFC p. 15. Defendant also removes an important part of the explanation for why such beliefs were not included: that Plaintiffs would be subjected to further discrimination. *See id.* at 15-16. *Defendant's efforts at obfuscation support that the fact that Defendant acknowledged the sincerity of Plaintiffs' religious beliefs is fatal to Defendant's argument.*  There is nothing unusual about such an effort to protect privacy, and courts have even let plaintiffs proceed pseudonymously in religion cases. *See, e.g. Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981).

[2] Defendant also twists the language of some of these cases. For example, Defendant tortures *Protos v Volkswagen*, as follows: "Plaintiffs' position stands in stark contrast to the Third Circuit's precedent which directs that "Title VII . . . require[s] . . . the courts to evaluate [plaintiffs'] claimed entitlement to accommodation of [their] religious principles." *Protos v. Volkswagen of Am., Inc.*, 797 F.2d 129, 136 (3d Cir. 1986)."  The full quotation is quite different:

   To be sure, Title VII does require the EEOC or the courts to evaluate a plaintiff's claimed entitlement to accommodation of her religious principles. But all the government must do is ascertain whether the employee's belief is religious and is sincerely held, just as the government does in ruling on conscientious objector applications.

*Protos v. Volkswagen of Am., Inc.,* 797 F.2d 129, 136–37 (3d Cir. 1986)

*Olmsted Med. Ctr.,* No. 22-2470 ADM/JFD, 2023 U.S. Dist. LEXIS 58793, at *7 (D. Minn. Apr. 4, 2023) (employer rejected plaintiff's request for religious and medical accommodation without providing reasons); *Finkbeiner v. Geisinger Clinic,* 623 F. Supp. 3d 458, 465-466 (M.D. Pa. 2022) (employer did not accept the plaintiff's beliefs as religious and rejected her request for accommodation; court concluded that the third amended complaint failed to state anything more than plaintiff's claim to a "God-given right to make [her] own choices" and was based only on "medical beliefs"); *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, No. 21-cv-4024, 2021 U.S. Dist. LEXIS 183966, (E.D. Pa. Sep. 27, 2021), at *4 (non-Title VII case challenging a school's masking requirement, defendant school did not scrutinize plaintiffs' beliefs because it stated that the applicable policy simply allowed no religious exemptions); *Federoff v, Geisinger Clinic,* 571 F.Supp. 3d at 387-388, 391-392 (M.D. Pa. 2021) (denying motion for preliminary injunction, *inter alia*, because the plaintiffs provided *no* information regarding their beliefs in the second amended complaint, or in their brief, or when pressed at oral argument); *Brown-Eagle v. County of Erie,* No. 12-314, 2013 WL 5875085 (W.D. Pa. Oct. 30, 2013)*,* at *6 (plaintiff did not seek accommodation for his beliefs or aver he was fired because of his them; court gave leave to amend second amended complaint to, *inter alia*, describe his religious beliefs.); *Prewitt v. Walgreens Co*, No. 11–02393, 2012 WL 4364660 (E.D. Pa. September 25, 2012) at *2, 7-8 (denying plaintiff's motion to amend his complaint for age discrimination and wrongful discharge to add claims for, *inter alia*, religious discrimination, because plaintiff had not included such claims in his EEOC/PHRA charge, the claims did not arise out of the same facts as the alleged discrimination, and Defendant had no notice). Plaintiffs have alleged "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint," and Defendant's motion should be denied. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556.

### 3. Alternatively, Plaintiffs Should be Allowed to Amend

Alternatively, if this Court is not convinced that the Rule 12(b)(6) standard is met, it should let Plaintiffs amend. In granting leave to amend a claim for religious discrimination under Title VII where the attorney for plaintiff said at oral argument that it could cure the deficiency by including factual allegations regarding plaintiff's religion, this Court, per Judge Padova, stated that courts must freely "permit a curative amendment unless such an amendment would be inequitable or futile." *Winans*, 2023 WL 2975872, at *6 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Futility means the amendment would flunk 12(b)(6). *Id.* (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Although Defendant argues that such amendment should not be allowed because Plaintiffs have already amended twice, *see* Deft. Br. at 13, 15, 37, this argument is facile and misleading and does not purport that an amendment would be futile or inequitable: it simply calls for a *robotic* denial, which is a request for an abuse of discretion. The previous amendments were not to correct any pleading deficiency but were merely to add, and then remove, a seventh party from this group of six plaintiffs. Such amendment is not surprising with that number of plaintiffs.  Both amendments came before Defendant's counsel even entered an appearance -- the motion and amended complaints were served on Defendant by process server (Doc. 12). *Most importantly*, the amendments were *not* in response to any challenge by the Defendant regarding religious belief, and they were not, of course, in response to this Court's granting a motion to dismiss with leave to amend for this reason and where Plaintiffs, after such notice and opportunity to cure, *still* failed to meet the Rule 12(b)(6) standard. In addition, the only reason Plaintiffs did not include their beliefs in the pleadings was, as explained in the footnote in the SAC set forth above, because Defendant *expressly told them* it was not questioning their religious beliefs, leading Plaintiffs to believe they did not have to subject themselves to the possibility of additional religious discrimination by including them in a public pleading. Of course, if this Court deems it necessary for the Plaintiffs to set forth their beliefs, they will do so.

Accordingly, granting Defendant's request to prohibit any amendment would be inequitable to these six Plaintiffs, who were fired after Defendant refused them the accommodations its own policy said were available, and after Defendant, only now, has decided to challenge Plaintiffs' beliefs in direct contradiction of its earlier position and now cynically asks this Court to refuse a simple amendment.

### 4. Defendant's Argument that Accommodating Plaintiffs' Religious Beliefs Would Have Created "Undue Hardship" is Premature -- and Based on the Wrong Legal Standard

Defendant argues that this Court should dismiss at this early stage, before any discovery, because, Defendant claims, providing Plaintiffs *the very accommodations that Defendant's own policy said were available* would have, somehow, caused Defendant "undue hardship." This self-contradictory argument should be rejected for (at least) four reasons.

**First,** to survive a motion to dismiss, Plaintiffs need only plead facts showing it is plausible that, after discovery, they can make out a *prima facie* case, and Plaintiffs have done so.

**Second,** and relatedly, showing that an accommodation is an undue hardship is the *Defendant*'s burden, *Groff v. DeJoy, 2023 U.S. LEXIS* 2790, and Defendant cannot show it meets this burden based on the complaint. Nor can Defendant do so as a matter of law. Defendant cites cases relying on a "*de minimis*" test for undue hardship, which the United States Supreme Court rejected less than two weeks ago, on June 28. *See id. at *28.* The High Court ruled that the proper standard is one that relies on the very words "undue hardship," meaning a *substantial* hardship. *Id.* Discovery is necessary. *See, e.g.*, *Equal Emp. Opportunity Comm'n v. Geisinger Health*, No. CV 21-4294-KSM, 2022 WL 10208553, at *21 (E.D. Pa. Oct. 17, 2022) ("the Court finds it premature to decide whether the policy is lawful at this early stage in the litigation. Significantly, *none* of the cases Geisinger cites in support of its position that its most qualified applicant policy is lawful were decided at the motion to dismiss stage. To the contrary, *each* decision was decided at summary judgment or after trial, and, therefore, the court making the decision had the benefit of discovery"). Indeed, none of the cases Defendant relies on for this argument were decided under Rule 12(b)(6) – they were all summary judgment or preliminary

injunction. Discovery will be necessary to determine whether accommodating Plaintiffs would have imposed *substantial* costs on Defendant: "[C]ourts must apply the [undue hardship] test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Groff*, 2023 U.S. LEXIS 2790 at *32. Assuming that safety risks are included among such costs, *see US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002), and that, under *Groff*, safety risks would have to be *substantial* and not merely *de minimis*, Defendant, to meet its burden, must prove that the Covid-19 vaccines are *substantially* effective in preventing or reducing transmission.  *See* SAC ¶¶ 22, 27, 59. Defendant must prove that the risk of transmission would be *substantial* if Plaintiffs were provided the accommodations of masking and testing. Defendants must prove that the risk of transmission would be *substantial* even where Plaintiffs had acquired natural immunity. Defendant must prove that "unvaccinated" employees would pose a *substantial* safety risk given Defendant chose not even to require "boosters," which were widely promoted as necessary because the COVID-19 vaccines' purported protection rapidly expired. This list is not exhaustive but nevertheless shows that Defendant likely has an *insurmountable* burden that hovers high over the four corners of the complaint.[3]

Notably, none of the cases Defendant relies on actually adjudicated the effectiveness of any of the COVID-19 vaccines but merely *assumed* they worked to prevent or limit infection and transmission – flying in the face of the FDA and others. SAC ¶¶ 1, 14-18. For example, the First Circuit, in *Does 1-6 v. Mills*, appears to rely on Maine's HHS and CDC when it states, *without citation,* that COVID-19 vaccination "protects against infection" and "reduces a person's risk of transmitting COVID-19 to others." *See Does 1-6,* 16 F.4th 20, 32-33 (1st Cir. 2021). The other two cases addressing COVID-19 make *no inquiry* into the efficacy of the vaccines and whether there is a

---

[3] Plaintiffs assume the PHRA will be interpreted per *Groff. See Fasold v. Justice,* 409 F.3d 178, 184 n. 8 (3d Cir. 2005).

meaningful distinction between vaccinated and unvaccinated workers but simply assume efficacy. *See O'Hailpin v. Hawaiian Airlines, Inc.*, CV 22-00007 JAO-KJM, 2022 WL 314155, at *10 (D. Haw. Feb. 2, 2022)*; Barrington v. United Airlines, Inc.*, 21-CV-2602-RMR-STV, 2021 WL 4840855, at *4 (D. Colo. Oct. 14, 2021). So do the EEOC guidelines Defendant cites calling Covid-19 a "direct threat" under the ADA; these guidelines are as of March 2020, which, in the context of understanding Covid-19, was eons ago.[4]   Moreover, these sources cannot be relied upon to dismiss the case of Divine Righteous Equality, *et al.* as a matter of law. According to the United States Supreme Court, what courts and employers must do is rely on *objective evidence*, not personal beliefs, not pronouncements by government entities such as the CDC. *See Bragdon v. Abbott*, 524 US 624, 649-50 (1998) ("The views of these organizations is not conclusive," and may be overcome by citing a "credible scientific basis."). *See also* SAC ¶¶ 41-44 (showing the scientific evidence presented to Defendant).[5]   Defendant cannot establish undue hardship as a matter of law, and its motion to dismiss on this basis should be denied.

**B. The SAC Properly Claims Race Discrimination**

The SAC states a claim for race discrimination under Title VII, Section 1981, and the PHRA.  To state a claim for race discrimination, under either a disparate treatment standard or pretext, a complaint need not state a *prima facie* case: "Instead of requiring a *prima facie* case, the post-*Twombly* pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal

---

[4] Three cases Defendant relies on do not deal with COVID-19 at all. *See Prince v. Massachusetts*, 321 U.S. 158 (1944); *Robinson v. Children's Hospital Boston,* 2016 WL 1337255 (D. Mass Apr. 5, 2016) (flu shot). These cases are premised on the idea that the vaccines in those cases prevent transmission.

[5] Defendant argues that links to sources regarding such science should be stricken from the complaint under Rule 12(f).  However, they are provided as necessary parts of describing three of the Plaintiffs' November 17, 2021 letter to Defendant as well as to showing widespread *notice* that the vaccines do not prevent transmission. The links are provided to be helpful; it has become common practice to address concerns about alternation by using the Internet Archive: https://archive.org/web/web.php

evidence of' the necessary element[s]." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556)).   "Under either theory of discrimination, the plaintiff must establish that her protected status was a factor in the employer's challenged action."   *Id*. at 788.[6] *See also Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,* 589 U.S. ___, 140 S. Ct. 1009, 1019 (2020) (Section 1981 claim must show that but for race it would have not lost protected right).

Defendant ignores these standards and argues only that the vaccine policy was facially neutral, and that Defendant applied it in a neutral manner. *See* Deft. Br. at 14. However, the policy is not necessarily neutral given the different responses by different racial groups, and deciding whether to accommodate a particular, individual employee is not necessarily neutral – indeed Defendant used its discretion to decide not to allow the accommodations that its own policy allowed and decided to fire six workers, five of them Black (83%), when Black people made up just 36% of Defendant's workforce. SAC ¶ 52.  Additional facts in the SAC – most of which Defendant ignores – evidence Defendant's *intentional* discrimination. For example, Defendant created a policy it *knew* would fall most heavily on its Black workers – and it did, and Defendant went ahead and fired the Black workers anyway. *See* SAC at ¶ 19. Defendant fired one Caucasian worker to cover up the obvious racist impact. *Id*. at ¶ 92. This is clear from the fact that Defendant helped the Caucasian employee obtain unemployment compensation but did not help the Black Plaintiffs, and that Defendant provided bonus money to the Caucasian plaintiff but not to the Black plaintiffs. *Id*. at ¶¶ 55-56.[7]

---

[6] " [A]t this stage [a plaintiff] is not obliged to choose whether she is proceeding under a mixed-motive or pretext theory, nor is she required to establish a *prima facie* case." *Connelly*, 809 F.3d at 791.

[7] Defendant argues that the fact it fired white employee means it did not discriminate illegally. If that were the law, then employers could fire hundreds of Black workers but be sure to include one Caucasian worker -- and avoid liability.

Plaintiffs have not taken discovery, which should reveal, *inter alia*, what Defendant employees and decisionmakers communicated about the Black employees; the decisions to fire each Plaintiff; which employees applied for accommodation and whether Defendant granted or denied such requests, and *why*; Defendant's conduct to impede the Black plaintiffs' access to unemployment compensation and deny their bonuses.

Defendant mischaracterizes the purpose served by the links in the SAC to two articles regarding "vaccine hesitancy" among Black Americans – and asks for this Court to strike them from the complaint. *See* Deft. Br. at 35-36.  The articles merely show the widespread awareness that Black Americans were disproportionately "vaccine hesitant." The articles are not offered to prove the truth of such hesitancy or to prove simply that "vaccine mandates are racist."  *See* SAC at ¶ 19.  They are properly part of the SAC.

In addition, the cases Defendant cites to argue that vaccine mandates cannot be racist are inapt. In *Bravo v. De Blasio*, 522638/2021, 2022 WL 1041076, at *1 (N.Y. Sup. Ct. Apr. 6, 2022), the state court rejected arguments about Black vaccine hesitancy on evidentiary grounds, ruling that the testimony was not proper expert opinion. *See Bravo*, 2022 WL 1041076 at *4-*5. The court also erroneously assumed that the vaccines prevented transmission -- and there was no presentation of evidence to the contrary. *See id.* at *8

At this point, without the benefit of discovery, Plaintiffs have pled sufficient facts to support their claim for intentional race discrimination. Even if this Court believes it is far-fetched that Defendant perpetrated intentional discrimination (which Defendant does not address), that is no reason to grant Defendant's motion. As the United States Supreme Court teaches, "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556. Plaintiffs should be permitted discovery on this issue.

**C. The SAC Properly Claims Retaliation**

Plaintiffs have pled plausible claims for retaliation under Title VII, Section 1981, the ADA, and the PHRA. Defendant can only argue otherwise by *shrinking* Plaintiffs' protected activity to only *filing EEOC charges*. *See* Deft. Br. at 32-33. The SAC shows that Plaintiffs engaged in significant protected activity well before they filed their charges.

A retaliation claim will survive Defendant's motion to dismiss if the complaint pleads factual allegations sufficient to raise a reasonable expectation that discovery will reveal evidence that: (1) plaintiff engaged in protected conduct; (2) Defendant took adverse action against plaintiff; and (3) a causal link exists between the protected conduct and adverse action. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). Plaintiffs Divine Equality Righteous, *et al*. have done so. All Plaintiffs applied for religious accommodation, which is protected activity, and Defendant retaliated against them for it, in several ways: (1) by not engaging in any interactive process to address ways of accommodating Plaintiffs, *see* SAC ¶¶ 39-40; (2) by informing them they would be deemed to have "voluntarily resigned," *id*. at ¶ 40; (3) by firing them, *id*. at ¶¶ 45-47; (4) by interfering with their efforts to secure unemployment compensation and not paying them bonus money they were owed, *see id*. at ¶¶ 55-56; and (5) by not rehiring them despite that it was clear their unvaccinated status did not pose any risk greater than if they were vaccinated. *See id*. at ¶¶ 60-64, 72. In addition, Defendant retaliated against Plaintiffs Dunson, Jones, and Yazujian in these same ways for their protected activity of opposing Defendant's discrimination and discriminatory policy by submitting the letter from undersigned counsel on November 17, 2021. *See* SAC ¶¶ 41-44. Plaintiffs Righteous, Lee, Jones, Holland, and Dunson subsequently engaged in a "belated interactive process" (protected activity), *see* SAC ¶¶ 66-72, where they opposed the Defendant's decision and policy (protected activity), and Defendant retaliated against them by not rehiring them despite that, by then, Defendant had had to "go remote" because of a Covid-19 outbreak among its *vaccinated* workforce. This protected activity all

regarded *religious discrimination*. After Plaintiffs filed their EEOC/PHRC charges, which was protected activity regarding religion, race, disability, and genetics, Defendant retaliated by not rehiring any of them for almost a year, when it rehired Plaintiff Lee, only after Defendant belatedly rescinded its flawed vaccine policy. *See* SAC ¶¶ 71-72. Accordingly, Defendant's motion to dismiss the retaliation counts should be denied.

**D. The SAC Properly Claims Disability Discrimination**

Plaintiffs have stated a claim that Defendant discriminated against them based on a ***perceived disability*** -- that they were infected with and spreading Covid-19. To prevail on a "regarded as" disability discrimination claim under the ADA, Plaintiffs must show that they ***either*** (1) have a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation; (2) have a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; ***or (3) have [no such impairment] but are treated by a covered entity as having a substantially limiting impairment.*** *See Eshelman v. Agere Systems, Inc*., 554 F.3d 426, 434 (3d Cir. 2009) (quoted in Deft. Br. at 26) (emphasis added).

Defendant's argument inadvertently reveals why the SAC properly pleads perceived disability discrimination.  Although Defendant argues that courts and the EEOC have stated that Covid-19 is not a disability under the ADA unless "the employee's symptoms are sufficiently long-lasting and sufficiently severe to constitute an 'impairment that substantially limits one or more major life activities' of the individual," *see* Deft. Br. at 29, the ***conduct*** of Defendant described in the SAC shows that Defendant perceived, and treated, Plaintiffs ***as if they had "a substantially limiting impairment.***" For example, Defendant required them all to get vaccinated *or be fired* and even refused them the accommodations in Defendant's own policy, masking and testing -- because that would be too

dangerous.  *See* SAC ¶¶ 39, 43, 45-49. Indeed, Defendant, in its motion, after saying how Covid-19 is no disability under the ADA unless it is severe and long-lasting, *see* Deft. Mot. at 28-29, goes on, in the very next pages, to argue that it would have been impossible to accommodate Plaintiffs' request not to be injected with a Covid-19 vaccine because, unvaccinated, they would present a ***"direct threat"*** to fellow employees and students and others by spreading Covid-19. *Id.* at 30-31. Defendant obviously **perceived Plaintiffs as disabled,** that is, as having "a substantially limiting impairment." How else could they be a direct threat?  Astonishing, Defendant argues, convolutedly:

> Plaintiffs have not alleged that OSB considered them "impaired" at all. Instead, they allege the OSB regarded them as "disabled" or "permanently sick and contagious" because they were unvaccinated and "permanently likely to infect coworkers and students." SAC ¶¶ 47, 120, 128. To suggest that the mere state of being healthy and unvaccinated is a "physical or mental impairment" within the scope of 42 U.S.C. § 12102(1) turns the statutory language on its head.

Deft. Br. at 27. ***No.*** Plaintiffs do ***not*** "suggest that the mere state of being healthy and unvaccinated is a physical or mental impairment.'" This makes no sense, as ***the SAC states that Defendant regarded and treated the Plaintiffs as if they were inherently unhealthy, disabled, permanently sick and contagious with Covid-19.***  SAC ¶¶ 47, 120, 128. The facts alleged all support that Defendant perceived Plaintiffs as such. It not only fired them; it blocked them from coming onto school grounds. SAC ¶¶ 46. It refused to rehire them after the pandemic subsided and it was universally acknowledged that vaccination had not prevented transmission.

Defendant even argues, "Plaintiffs' refusal to vaccinate also shows a reckless disregard for the safety of their fellow workers and the vulnerable student population by putting others in greater danger of contracting COVID-19." Deft. Br. at 31.[8]  Defendant tries to wriggle out of liability by claiming, falsely:

---

[8] Given that Defendant's own policy recognized the scientific fact that the vaccines did not prevent transmission, and given that Defendant's policy nevertheless required only accommodated *unvaccinated* people to test, this insult makes no sense. Defendant knew that vaccinated employees could become infected with and spread Covid-19, so the fact that *they* were not testing regularly likely

Here Plaintiffs have not pled any facts to support the notion that OSB perceived Plaintiffs as having COVID-19 at the time of their terminations. Rather, the concern underlying OSB's policy was that, as unvaccinated persons, Plaintiffs were more likely to contract and spread COVID-19 in the future and, at that future time, endanger the health of those around them. SAC ¶¶ 27, 39.

Deft. Br. at 28. If that were the case, then Defendant should have accommodated Divine Righteous Equality, *et al*. under its own policy, by letting them *test regularly* and don masks.  No matter how hard Defendant huffs and puffs, the only reasonable inference from the SAC is that Defendant perceived Plaintiffs as disabled -- severely impaired -- and discriminated against them on that basis.

Defendant's claim of undue hardship under the disability laws, an affirmative defense, should be rejected, for essentially the same reasons its defense of undue hardship to the religious discrimination claim should be rejected: it is a fact-specific inquiry that cannot be accomplished on a motion to dismiss. *See supra* at 11-12 (listing inquiries).  Discovery is necessary.

## CONCLUSION

Plaintiffs respectfully requests that this Honorable Court deny Defendant's motion to dismiss and allow them to proceed on their claims against Defendant.  In the alternative, Plaintiffs respectfully requests leave to amend any deficiencies.

Respectfully Submitted,

_____

BRIAN J. FOLEY, ESQUIRE
6701 Germantown Ave - Ste 200
Philadelphia, PA 19119
(267) 930-4425 v (267) 930-4425 f
Attorney for Plaintiffs

**Dated: July 11, 2023**
_____

made them more of a "direct threat" than an unvaccinated employee who was masking and testing regularly.

## CERTIFICATE OF SERVICE

I, BRIAN J. FOLEY, ESQ., attorney for Plaintiffs, hereby certify that on the date below, the foregoing *Plaintiffs' Response to Defendant's Motion to Dismiss* was filed and served via this Court's electronic filing system on all counsel of record.

_____
Brian J. Foley, Esq.

July 11, 2023

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Divine Equality Righteous, et al.** | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION NO.  23-cv-846 |
| | : | |
| v. | : | |
| | : | |
| **Overbrook School for the Blind** | : | |
| | : | |
| Defendant | : | |

## ORDER

**AND NOW,** this ___ day of _____, 2023, upon consideration of Defendant's Motion to Dismiss (Doc. 18) and Plaintiff's Response, it is hereby **ORDERED** that Defendant's Motion is **DENIED.**

BY THE COURT:

_____

Wendy Beetlestone, U.S.D.J.