**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DIVINE EQUALITY RIGHTEOUS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> OVERBROOK SCHOOL FOR THE BLIND, <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> :: <br> :     Civil Action No. 2:23-cv-00846-WB |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF DEFENDANT OVERBROOK SCHOOL FOR THE BLIND'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

This motion is about the sufficiency of Plaintiffs' third-filed Complaint in this matter, not, as Plaintiffs have argued, the efficacy of COVID-19 vaccines.  In effect, Plaintiffs ask that a jury be allowed to decide whether the COVID-19 vaccines were effective and how effective they were against the variants of COVID-19 at issue when the Plaintiffs were terminated. Pl. Br. 12 ("Defendant, to meet its burden, must prove that the Covid-19 vaccines are substantially effective in preventing or reducing transmission.").  That is not the law.

Plaintiffs' attack on the science behind the vaccines also suggests that the Court should evaluate whether OSB discriminated against them based on current knowledge, not based on what was known at the time OSB implemented a vaccine mandate to protect members of its community. See Pl. Br. 13 (rejecting Defendant's reliance on CDC guidance from the outset of the pandemic for decisions made early in the pandemic because "in the context of understanding Covid-19, [March 2020] was eons ago.")  The question is not whether OSB was correct about the vaccines' efficacy in hindsight, or even whether the vaccines are effective at all, but whether Plaintiffs have alleged facts sufficient to draw an inference that OSB discriminated against them on the basis of their religion, race and disability, and retaliated against them.  As the Third Circuit has noted:

Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination.  Thus, when an employee is discharged because of an employer's honest mistake  ...  anti-discrimination laws offer no protection."

*Capps v. Mondelez Global, LLC*, 847 F.3d 144, 154 (3d Cir. 2017)

Here, Plaintiffs have failed to plead facts sufficient to support their claims for religious discrimination, race discrimination, disability discrimination, or retaliation.

1.      **Plaintiffs' Second Amended Complaint Fails to State a Claim for Relief for Religious Discrimination under Title VII or the PHRA (Counts I and II)**

Plaintiffs failed to plead any facts regarding the beliefs which they claim are both sincere and religious, but argue without citation to authority that they need not plead their beliefs because OSB did not challenge their sincerity when it determined that granting an accommodation would impose an indue hardship.  Assuming *arguendo* that the school would not suffer a hardship does not establish the Plaintiffs' beliefs to be either sincere or religious.  It remains Plaintiffs' burden to plead facts which, if true, would satisfy both the sincerity and religious prongs of the inquiry.[1]

Plaintiffs next argue they have stated claims because they were ultimately correct about the vaccines' efficacy in preventing transmission, but that is not the issue.  Their argument presumes the OSB policy was based on a claim the vaccines were 100% effective; but the policy expressly acknowledges it is not assuming the vaccines were completely effective. Plaintiffs must litigate the policy as it is, not the policy as they imagine it to be.  Plaintiffs then continue to state that they have effectively pled discrimination by alleging that "the intent of the policy was to discriminate against employees," but those are exactly the kinds of conclusory labels that do not meet the *Twombly/Iqbal* standard, and Plaintiffs' claims for religious discrimination should be dismissed.

---

[1] Plaintiffs do not allege they all share the same religious belief.  It would be unwieldy to allow this case to proceed on the expectation that one case could decide whether six people's distinct religious beliefs are sincere and sufficiently broad to be considered religious under in *Africa v. Pennsylvania,* 662 F.2d 1025, 1031 (3d Cir. 1981).

Plaintiffs assert that this Court may not consider an affirmative defense as the basis for a 12(b)(6) motion,  Pl. Br. 19,  but they overlook that "an exception is made where the affirmative defense clearly appears on the face of the pleading."  *Clark v. Sears, Roebuck & Co.*, 816 F. Supp. 1064, 1067 (E.D. Pa. 1993).  Here, the defense under Title VII of an "undue hardship" is manifest.

This is a lawsuit about whether a school for blind has an undue hardship that would override religious objections to a vaccine mandate.  Plaintiffs correctly note that after this motion was filed the Supreme Court clarified that the standard for proving undue hardship is by demonstrating that the burden is substantial rather than *de minimis* in the context of an employer's operations. *Groff v. DeJoy*, No. 22-174, slip op. at 15. (U.S. June 29, 2023).   Unlike, most religious vaccine exemption requests, the employer in this case deals with a population of children who, by definition, faced greater risk of exposure in 2021 due to their dependence on close physical conduct with others and the inability to determine visually whether others around them were wearing masks, washing their hands, or social distancing.  In August of 2021, COVID transmission rates were high and the Centers for Disease Control ("CDC") was advising that the newly emerged and prevalent COVID variant, Delta, was twice as contagious and more likely to cause severe illness and hospitalization. *See* CDC August 6, 2021 COVID-19 Guidance, "*Delta Variant: What We Know About the Science.*"[2]  The CDC cautioned there was an urgent need for increasing COVID-19 vaccination coverage *in addition* to masking in areas of substantial or high transmission.  *Id*.

Further, this Court can take judicial notice that the CDC's Advisory Committee on Immunization Practices prioritized access to COVID-19 vaccines for employees of schools for the physically disabled ahead of even those working in the Courts or for religious organizations.[3]

---

[2] The CDC Guidance document may be found at the URL: https://stacks.cdc.gov/view/cdc/108671.

[3]  *See CDC Interim List of Categories of Essential Workers Mapped to Standardized Industry Codes and Titles.*OSB's NAICS industry code is 611110, which includes elementary and secondary schools for the physically disabled.  Those employed at companies with that industry code were in Phase 1b, of the vaccine rollout, following only essential

Blind children are especially vulnerable to COVID-19 because of their dependence on tactile sensation in order to interact with the world, including through reading braille print and touching surfaces. As a result, social distancing is far more difficult. Indeed, while touching of surfaces is no longer considered to be a significant source of the currently prevalent COVID-19 variant, CDC guidance at the time noted that "[r]espiratory droplets can land on hands, objects, or surfaces around the person when they cough or talk, and people can then become infected with COVID-19 from touching hands, objects or surfaces with droplets and then touching their eyes, nose, or mouth." *See CDC December 6, 2021 Guidance: COVID-19 Overview and Infection Prevention and Control Priorities in non-U.S. Healthcare Settings.*[4] The blind are also unable to see whether those around them are properly wearing masks or observing social distancing, further increasing their vulnerability to the pandemic.

Against this backdrop, in September of 2021, OSB issued a policy mandating vaccination, which expressly acknowledged that vaccination would not eliminate transmission, but noted that "vaccination is the key prevention strategy to end the pandemic and return to normal and diminish the threat to vulnerable individuals." SAC ¶ 27. As the Supreme Court observed long ago when faced with a challenge to a local ordinance mandating smallpox vaccinations:

> Upon the principle of self-defense, of paramount necessity, a community has the right to protect itself against an epidemic of disease which threatens the safety of its members. It is to be observed that when the regulation in question was adopted, smallpox, according to the recitals in the regulation adopted by the Board of Health, was prevalent to some extent in the city of Cambridge and the disease was increasing.

---

healthcare workers in Phase 1a. The CDC guidance is available at https://www.cdc.gov/vaccines/covid-19/categories-essential-workers.html#:~:text=Phase%201a%20includes%20healthcare%20personnel,in%20Phase%201a%20or%201b. (last accessed July 16, 2023)

[4]   Current CDC guidance is available at: https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html. (last accessed July 16, 2023). Earlier versions of the CDC guidance are accessible through the Internet Archive Wayback Machine and the quoted language appeared consistently on the CDC web site dating back to at least August 12, 2020. https://web.archive.org/web/20210203004648/https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html. (last accessed July 16, 2021).

*Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905).

More than one million Americans have died from COVID-19 infections since the start of the pandemic, and OSB implemented its mandatory vaccination policy in order to "diminish the threat to vulnerable individuals" in its care, consistent with the latest guidance from the CDC at that time.  No one knew where the pandemic would lead, and in the face of a novel, highly contagious, and lethal disease, OSB implemented guidance from public health authorities in defense of the students and staff that make up the OSB community.  In *Jacobsen*, the Supreme Court was presented with arguments very similar to those Plaintiffs raise, concerning the efficacy of smallpox vaccination.  The Court rejected those concerns, recognizing that although,

> It must be conceded that some laymen, both learned and unlearned, and some physicians of great skill and repute, do not believe that vaccination is a preventive of smallpox… [t]he fact that the belief is not universal is not controlling, for there is scarcely any belief that is accepted by everyone. The possibility that the belief may be wrong, and that science may yet show it to be wrong, is not conclusive; for the legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases.

*Jacobson* 197 U.S. at 34-35.  The Court was also concerned about the possibility of being asked to make scientific pronouncements about the efficacy of a vaccine, stating;

> While we do not decide and cannot decide that vaccination is a preventive of smallpox, we take judicial notice of the fact that this is the common belief of the people of the State, and with this fact as a foundation we hold that the statute in question is a health law, enacted in a reasonable and proper exercise of the police power.

While the Supreme Court in *Jacobson* was addressing the viability of a governmental vaccine mandate under the Due Process clause of the Constitution, the Court's reasoning is equally applicable here: the Courts are not the appropriate place to address scientific disputes regarding vaccine efficacy; and even if Plaintiffs were correct that the vaccines were ineffective, that would be insufficient to state a claim that OSB had discriminated against them in implementing the mandate, because an employer need not be clairvoyant or universally correct in its decision

making. *Capilli v. Whitesell Const. Co.*, 271 F. App'x 261, 265-66 (3d Cir. 2008) ("our function is not to determine whether [the employer's] decision to fire [the employee] was 'wise, shrewd, prudent, or competent.' Instead, we must determine whether … [the] decision was based on an improper motive.")

Finally, Plaintiffs argue that in order to sustain an undue hardship defense, OSB needs to show the vaccines are substantially effective.  Pl. Br. 12. Nothing in the statute suggests the Court need engage in such a scientific analysis.  Instead, OSB must show that the burden of exempting Plaintiffs' from the policy, i.e. exposing the school's disabled student population to additional risk, is a substantial burden.  It is both substantial and unjustifiable to force OSB to submit those students in its care to unnecessary risk.  As OSB argued in its opening brief, under any conceivable "undue hardship" standard, it would be unjustifiable and impose an undue burden to require the school to submit the vulnerable disabled children in its care to such unnecessary risk.

2.    **Plaintiffs' Complaint Fails to State a Claim for Relief for Race Discrimination under Section 1981, Title VII, or the PHRA (Counts III, IV, and V)**

42 U.S.C. § 1981 applies only to intention racial discrimination, *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474-75 (2006), and requires proof that the alleged injury would not have occurred "but for" the defendant's unlawful conduct. *Comcast Corp. v. Nat'l Ass'n of African-American Owned Media*, 140 S. Ct. 1009, 1013, 206 L. Ed. 2d 356, 360 (2020).  Here, the school applied the same rule equally and terminated those who did not get the COVID-19 vaccine regardless of their race.  Plaintiffs argue without providing any factual support that OSB fired one Caucasian Plaintiff in order to "cover up the obvious racist impact" of the terminations of those who failed to comply with the vaccine mandate, but this conclusory statement of motivation does not enjoy any presumption of truth on a motion to dismiss. *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012).  Plaintiffs conveniently ignore that one African-American employee

who opposed the vaccine mandate, Kevin Lewis, was accommodated by being allowed to work a night shift where he would not have contact with other employees or students.  Am. Compl. ¶¶ 9, 51.  Therefore, the only reasonable inference that can be drawn from the SAC is that OSB had a process in place to resolve requests for exemptions from the vaccine mandate, that it applied that policy by determining that no accommodations were possible for five African American employees and One Caucasian employee, and granted an accommodation to one African American employee.   No inference can be drawn from these facts that race played either a determinative or motivating factor in the Plaintiffs' terminations and this failure in pleading is fatal to Plaintiffs' Section 1981 claim.[5]

Faced with the fact that the School terminated both Caucasian and African American employees for failing to comply with the vaccine mandate, the lack of evidence of disparate treatment means Plaintiffs are left with only a disparate impact model on which to hang their Title VII and PHRA race discrimination claims.  Plaintiffs attempt to spin a disparate impact claim by citing news articles about general vaccine hesitancy among African Americans as purportedly showing that OSB should have been on notice that its policy was discriminatory because there was "widespread awareness that Black Americans were disproportionately 'vaccine hesitant.'"  Pl. Br. 2, 15.  However, the asserted vaccine hesitancy of African-Americans in the general population says nothing about the impact within the OSB workforce.  Courts may reject evidence of racial

---

[5] Plaintiffs also argue that racial discrimination played a part in OSB's determination as to whether to challenge Plaintiffs' claims for Unemployment Compensation.  While the Plaintiffs have asserted conclusory allegations that the decision on whether to challenge each Plaintiff's unemployment claim was based on race, they plead no facts to support such a claim. Arguments in a brief unsupported by factual allegations in a Complaint cannot overcome a motion to dismiss. *Town of Secaucus v. United States Dep't of Transp.*, 889 F. Supp. 779, 791 (D.N.J. 1995), *aff'd*, 79 F.3d 1139 (3d Cir. 1996). Plaintiffs' identified four other specific employment practices which they claim demonstrate a racial animus (Pl. Br. 16), but they do not allege any facts suggesting disparate racial treatment to support any of them.  Since Plaintiffs have failed to make any factual allegations in the Complaint, Amended Complaint or Second Amended Complaint underlying their belief that race motivated the unemployment decisions their claims for race discrimination fail.

disparity gleaned from broad statistics where, as here, there is a reason to question whether those statistics are representative of the affected population. In *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1369 (5th Cir. 1992), the court rejected national statistics about education levels by race in a challenge to a company's promotion policy because those statistics were not necessarily representative of workers already working for the company and seeking promotion. Similarly, in *Fletcher v. Berkowitz Oliver Williams Shaw & Eisenbrandt*, 537 F. Supp. 2d 1028, 1030 (W.D. Mo. 2008), in a challenge to an employer's consideration of plaintiffs' prior sexual assault conviction, the court rejected as immaterial the argument that African Americans were overrepresented in the larger pool of people with felony convictions. The court stated that the general felony data said nothing about the representation of African Americans among those with sexual assault convictions, which was the reason the employer terminated this employee. Therefore, the news articles that Plaintiffs cite fail to provide any notice that the African American employees of OSB were vaccine hesitant, and the reference to these articles should be stricken from the Complaint for the reasons set forth in OSB's opening brief.

Plaintiffs' disparate impact claim fails for two reasons.  First, within OSB's workforce, the only conclusion to be drawn from the allegations is that a higher percentage of African Americans with religious objections were accommodated (14% with N=7) than among the white employees (0% with N=1).  More fundamentally, a plaintiff cannot make a prima facie case of adverse impact where the affected group is "too small for any valid statistical comparisons," *Council 31, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Ward*, 978 F.2d 373, 378 (7th Cir. 1992); *see also Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 996-97 (1988) (noting that "small or incomplete data sets" prevent a plaintiff from making a prima facie case of adverse impact).

3. **Plaintiffs' Second Amended Complaint Fails to State a Claim for Relief for Retaliation under Title VII, the ADA, or the PHRA (Counts I, II, II, IV, and VII)**

Plaintiffs claim they were retaliated against for (1) requesting a religious accommodation, (2) filing charges with the EEOC, and (3) submitting a letter from their counsel to OSB. The caselaw holds that neither requesting a religious accommodation nor being terminated after such a request was denied gives rise to a claim for retaliation. *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360-JMG, 2023 U.S. Dist. LEXIS 10747, at *25 n.8 (E.D. Pa. Jan. 23, 2023 (holding Plaintiff failed to allege protected activity when she stated only that "she was suspended and ultimately terminated by Defendant only after requesting religious accommodation from Defendant's requirement that she test for COVID-19 via nasal swab."); *Refat v. Franklin Fin. Servs. Corp.*, 2021 U.S. Dist. LEXIS 117768 at *15 n.6 (M.D. Pa. June 24, 2021) (holding an employee fails to state a Title VII retaliation claim based on an employer's denial of a religious accommodation request "because 'merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation'"). *See also EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018).

While filing a charge with the EEOC or having counsel send a letter could constitute protected activity if they preceded an adverse employment action, to accept Plaintiffs' theory would make every Title VII lawsuit into a dual claim for retaliation based on the decision of the employer not to reverse its earlier decision to terminate the plaintiff. Plaintiffs do not allege any adverse employment action was taken against them *after* they filed EEOC charges or had their counsel write a letter, thus failing to alleged the necessary causal link to establish a retaliation claim. *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994). Plaintiffs alleged that they were terminated for not being vaccinated, not for requesting an accommodation to the policy. SAC ¶¶ 30, 49, 52, 59.

4.      **Plaintiffs' Second Amended Complaint Fails to State a Claim for Relief for Disability Discrimination under the ADA or the PHRA (Counts VI and VII).**

Plaintiffs cite primarily from OSB's brief in asserting that they were perceived as disabled, but in considering a 12(b)(6) motion, a court is limited to the facts alleged in the Complaint and cannot consider facts raised for the first time in counsel's legal memorandum." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 468 (D.N.J. 1995), *citing Town of Secaucus v. United States Dep't of Transp.*, 889 F. Supp. 779, 791(D.N.J.1995), *aff'd*, 79 F.3d 1139 (3d Cir. 1996).  Just as a Court should not draw conclusions from facts raised in Plaintiffs' brief, it should not allow Plaintiffs to attempt to avoid pleading facts based on arguments in OSB's briefs. The only fact in the SAC that they cite to is that OSB barred Plaintiffs' from coming back onto campus, but this allegation only serves to support OSB's direct threat defense – namely that it viewed the employees' unvaccinated status as an unjustifiable and substantial risk to its students given the CDC guidelines at the time and that, as noted in the vaccination policy, OSB was taking steps to mitigate risk.  SAC ¶ 27.

5.      **CONCLUSION**

Despite amending their complaint twice, Plaintiffs still failed to allege, beyond conclusory assertions and labels, facts that support any claim for relief. Therefore, for the foregoing reasons, Plaintiffs' Second Amended Complaint should be dismissed in its entirety with prejudice.

Dated:  June 18, 2023                            Respectfully submitted,

                                                COZEN O'CONNOR, P.C.

                                                */s/ Jeffrey I. Pasek*
                                                Jeffrey I. Pasek, Esq. (PA 23700)
                                                Christopher J. Kelly, Esq. (PA 325427)
                                                1650 Market Street, Suite 2800
                                                Philadelphia, PA 19103
                                                Phone: 215-665-2072
                                                Fax: 215-701-2072
                                                Email: jpasek@cozen.com

LEGAL\64873906\2