IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIVINE EQUALITY RIGHTEOUS, ANGELINA LEE, NYOKA E. JONES, TAMEEKA HOLLAND, ARKEEM DUNSON, AND SOPHIA YAZUJIAN, **Plaintiffs,** | CIVIL ACTION |
| v. | NO. 23-846 |
| OVERBROOK SCHOOL FOR THE BLIND, **Defendant.** | |

## MEMORANDUM OPINION

Plaintiffs Divine Equality Righteous, Angelina Lee, Nyoka E. Jones, Tameeka Holland, Arkeem Dunson, and Sophia Yazujian, sue Defendant Overbrook School for the Blind for discrimination following their termination by Defendant after "denying their requests for religious exemptions to [Defendant's] COVID-19 vaccination requirement."  Plaintiffs bring claims for discrimination on the basis of religion, race, and disability pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA").[1]  Plaintiffs' claims are based on theories of disparate treatment, disparate impact, and retaliation.  Plaintiffs seek declaratory and injunctive relief as well as compensatory and punitive damages.

Defendant moves to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Additionally, Defendant moves to strike portions of the Complaint pursuant to Federal Rule of Civil Procedure 12(f).  For the reasons that follow,

---

[1] Plaintiffs have abandoned their claims pursuant to the Genetic Information Nondiscrimination Act of 2008 ("GINA").

Defendant's motion will be granted in part and denied in part.

## I.   FACTUAL BACKGROUND

Plaintiffs Divine Equality Righteous, Angelina Lee, Nyoka E. Jones, Tameeka Holland, Arkeem Dunson, and Sophia Yazujian were employees of Defendant Overbrook School for the Blind, a private school for the blind in Philadelphia, Pennsylvania. Five of the Plaintiffs (Divine Equality Righteous, Angelina Lee, Nyoka E. Jones, Tameeka Holland, and Arkeem Dunson) are black. The remaining Plaintiff, Sophia Yazujian, is white. At the relevant times, Plaintiffs Righteous, Lee, Jones, Holland, and Dunson worked as paraeducators, which involved working with certified and licensed educators and the blind children attending the School. Plaintiff Yazujian worked in the School's kitchen, helping to prepare meals for students and staff.

In response to the COVID-19 pandemic, Defendant began to operate remotely in the spring of 2020. But for most of the subsequent school year (2020-21) and into the fall of 2021, Defendant was open for in-person teaching.

During the 2020-21 school year, before and after COVID-19 vaccines became available, Defendant operated without requiring any worker to receive the COVID-19 vaccine. In September 2021, however, Defendant announced a new policy requiring that all its employees receive the COVID-19 vaccine. As Plaintiffs allege, Defendant "denied employees the option of continuing to work [for Defendant] without being injected" and "provided no testing option for employees who did not want to be injected with the novel COVID-19 vaccines." "The *only* way for an employee to continue working [for Defendant] without being injected, according to the policy, was if the worker applied for, and [Defendant] granted, a medical or religious accommodation."

Pursuant to this policy, Defendant announced that if employees did not provide proof of

vaccination by November 29, 2021 or had not received a medical or religious exemption, they would "be considered as having resigned from their employment."  Defendant further required that any employee who received an exemption "must both comply with [Defendant's] general masking mandate and provide the results of a weekly negative PCR test for COVID-19 from an approved testing site."

In the face of this policy, Plaintiffs requested accommodations based on their religious beliefs and expressed those beliefs to Defendant.  The content of these religious beliefs, as discussed in greater detail *infra*, is not clear because Plaintiffs have not included any pertinent details in their Second Amended Complaint.

In response to these requests, then HR Director Carol Havens-Dobbs told each Plaintiff that Defendant did not question the sincerity of their religious beliefs.  Nonetheless, Plaintiffs allege that Defendant failed to engage in an interactive process with Plaintiffs to identify and implement reasonable accommodations for those beliefs.  Instead, Havens-Dobbs informed each Plaintiff that Defendant was denying their requests for accommodations because, as Plaintiffs phrase it, "letting the Plaintiffs keep working at [Defendant] would be too dangerous."  Havens-Dobbs then told Plaintiffs that if they were not fully vaccinated, they would be deemed to have voluntarily resigned, consistent with Defendant's policy.  She gave them until November 17, 2021 to advise Defendant as to whether they intended to receive the COVID-19 vaccine.

Plaintiffs Dunson, Jones, Yajuzian, and another employee (unnamed in the Complaint) soon retained counsel, who emailed a letter to Havens-Dobbs on November 17, 2021 asking Defendant to reconsider its decision denying the accommodations sought.  The letter contained information regarding the efficacy of the COVID-19 vaccine and stated, *inter alia*, that the "premise of the 'vaccine' requirement was baseless. . . ."  In response, Havens-Dobbs told

Plaintiffs they still must provide proof of vaccination or would be deemed to have voluntarily resigned.

Despite not obtaining the vaccine, Plaintiffs nonetheless reported to work on or around November 29 and 30 but were "barred . . . from coming onto [the] grounds."  Defendant told the Plaintiffs they could return to work only if they provided proof of vaccination.

Upon Plaintiffs' information and belief, Defendant accommodated two non-party employees' requests for exemption based on medical concerns and/or religious beliefs.  One was a security guard, who is black, whom Defendant accommodated "by moving him to the night shift."[2]  There are no allegations with respect to the accommodation(s) provided to the second, unnamed employee.

Plaintiffs allege that while 36% of Defendant's employees were black (90 out of 250) at the relevant time, the five black Plaintiffs terminated by Defendant constituted 83% of all the workers fired for refusing to follow the vaccination policy (*i.e.*, 5 out of 6).  In other words, Defendant fired six employees (the six Plaintiffs), and all but one of them was black.

Plaintiffs further allege that Defendant continued to discriminate against the five black Plaintiffs after their termination.  Specifically, "all five Black Plaintiffs applied for Pennsylvania unemployment compensation" and "[n]one of them received any such financial assistance[] because [Defendant] opposed it and did not assist them in receiving this money to help them avoid spiraling into poverty."  On the other hand, Plaintiffs state, Defendant did not "oppose or otherwise obstruct the successful application for unemployment compensation by" the only white employee terminated, Plaintiff Yazujian.  Additionally, Defendant did not "provide the

---

[2] The unnamed security guard is not a plaintiff in this action.  Nonetheless, Plaintiffs' Complaint alleges that this "accommodation" was in fact a "retaliation against him for exercising his rights to accommodation of his religious beliefs as well as for . . . prior protected activity of filing a lawsuit against [Defendant] . . . ."

Black Plaintiffs the bonus or any portion of the bonus they expected to receive," while Defendant "did provide this bonus or portion of this bonus to Ms. Yazujian[.]"  On this basis, Plaintiffs allege that the "firing of Ms. Yazujian was an attempt to camouflage [Defendant's] racist motive behind the firing of the five other employees."

Weeks after Plaintiffs were terminated, there were numerous COVID-19 infections at the School.  As a result, Defendant closed down its in-person operations and returned to remote operations.  During this time of remote work, Defendant did not offer to rehire any of the Plaintiffs.

Plaintiffs Righteous, Lee, Jones, Holland, and Dunson later attempted to "engage [Defendant's counsel] in a belated interactive process to try to stanch the damage and suffering [Defendant] had inflicted on them. . . ."  In response, [Defendant] told these Plaintiffs "they could return to their jobs if they 'got vaccinated.'"

On or around December 20, 2022, Defendant rescinded its vaccine mandate and told the terminated employees they could apply again for their jobs.  Defendant did not offer lost pay or other compensation for any losses.  Plaintiff Lee returned to work two months later.

Throughout their briefing, Plaintiffs additionally make various allegations regarding the efficacy of the COVID-19 vaccine.  Some of these allegations are addressed in detail *infra* with respect to Defendant's motion to strike portions of the Complaint pursuant to Federal Rule of Civil Procedure 12(f).

Plaintiffs have amended their Complaint twice already, but in each instance the amendments were only to add or dismiss a party.

## II.    LEGAL STANDARDS

Defendant moves to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 210-11; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002) (the "ordinary rules for assessing the sufficiency of a complaint apply" to discrimination claims at the pleading stage rather than the evidentiary standard supplied by the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

## III.   DISCUSSION

### A.  Religious Discrimination (Title VII and the PHRA)[3]

Plaintiffs first advance religious discrimination claims, alleging they were discriminated

---

[3] "[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002). Here, the parties have not identified any specific difference in language that would implicate Plaintiffs' claims.

against by Defendant after they refused to obtain the COVID-19 vaccine to comply with Defendant's policy.

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a).  Accordingly, Title VII prohibits employers from discriminating against employees on the basis of their religion. *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009) (citing 42 U.S.C. § 2000e-2(a)(1)).  With respect to their employees' religious beliefs, employers must "make reasonable accommodations . . . unless doing so would result in 'undue hardship' to the employer." *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir. 2000) (citing 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j)).

To make out a *prima facie* case of religious discrimination, employees must demonstrate: (1) they hold a sincere religious belief that conflicts with a job requirement; (2) they informed the employer of the conflict; and (3) they were disciplined for failing to comply with the conflicting requirement. *Shelton*, 223 F.3d at 224; *Webb*, 562 F.3d at 259.

As to what qualifies as a religious belief, the Third Circuit has adopted the following definition of religion:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters.  Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching.  Third, a religion often can be recognized by the presence of certain formal and external signs.

*Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981).

Defendant argues that, while Plaintiffs broadly allege they held sincere religious beliefs that conflicted with Defendant's vaccination policy, their Second Amended Complaint is

"completely devoid of any identification of what those beliefs are."  This is correct.

As Plaintiffs admit, "a recitation of [their] beliefs is not included in [their] Complaint[.]"

Attempting to explain this omission, Plaintiffs state the following in a footnote in their

Complaint:

> [Defendant's] requiring Plaintiffs to explain their religious beliefs was highly intrusive, and Plaintiffs never should have been forced to divulge their personal beliefs to [Defendant] given that the policy for which Plaintiffs sought accommodation was nonsensical *ab initio*.  Including Plaintiffs' personal religious beliefs in this public Complaint would further invade Plaintiffs' privacy and might subject Plaintiffs to further abuse and further discrimination motivated by widespread anti-religious animus.

Regardless of their reasons for not explaining the nature of their religious beliefs, without

any such allegations, Plaintiffs have failed to adequately plead the first element of their *prima*

*facie* case.  *See, e.g.*, *Federoff v. Geisinger Clinic*, 571 F. Supp.3d 376, 387 (M.D. Pa. 2021)

(concluding it was "impossible" to determine if plaintiffs adequately alleged a sincere religious

belief because they provided "no information whatsoever about their beliefs" in their complaint);

*Brown-Eagle v. Cnty. of Erie*, 2013 WL 5875085, at *6 (W.D. Pa. Oct. 30, 2013) (dismissing

religious discrimination claim where plaintiff failed to "include sufficient allegations to explain

what that sincere religious belief is"); *Blackwell v. Lehigh Valley Health Network*, 2023 WL

362392, at *8-9 (E.D. Pa. Jan. 23, 2023) (similar); *see also Winans v. Cox Auto., Inc.*, 2023 WL

2975872, at *3 (E.D. Pa. Apr. 17, 2023) (dismissing religious discrimination claim where

plaintiff failed to adequately allege his objections to the COVID-19 vaccine were religious in

nature where the complaint "primarily detail[ed] [p]laintiff's purely scientific, personal, and

medical objections to the vaccine, including his belief that the vaccine is ineffective and his

concerns with its potential side effects.").

Plaintiffs argue that, because "Defendant specifically told each Plaintiff that it was not

contesting the sincerity of their religious beliefs" (emphasis omitted)—referencing then HR

Director Havens-Dobbs's response to the Plaintiffs following their request for accommodation—

they are somehow relieved of the pleading requirements for their religious discrimination claim.

But merely because Defendant "did not question Plaintiffs' beliefs" at the time they requested an

accommodation does not, for the purposes of their pleadings, establish that Plaintiffs have

adequately alleged they have sincerely held religious beliefs.

Plaintiffs have thus failed to allege sufficient facts to support their religious

discrimination claims, and such claims will be dismissed without prejudice.

### B.  Race Discrimination (Title VII, Section 1981, and the PHRA)

Plaintiffs' claims of race discrimination are based on both disparate treatment and

disparate impact theories.  *See Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107,

112 (3d Cir. 1996) (highlighting the difference between the two theories).

#### i.  *Disparate Treatment*

Plaintiffs Righteous, Lee, Jones, Holland, and Dunson allege that Defendant terminated

them because they are black.  Plaintiff Yazujian, although being white, claims that she was fired

in order for Defendant to "cover up that [Defendant] was engaging in race discrimination in

intentionally creating a policy that resulted in firing employees the overwhelming majority of

whom were black."

To allege a *prima facie* case of disparate treatment on the basis of race, a plaintiff must

show that "(1) [he] is a member of a protected class; (2) [he] was qualified for the position [he]

sought to attain or retain; (3) [he] suffered an adverse employment action; and (4) the action

occurred under circumstances that could give rise to an inference of intentional discrimination."

*Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *see also Butler v. Arctic Glacier USA*, 213

F. Supp.3d 711, 716 (E.D. Pa. 2016) (race discrimination claims under Title VII, Section 1981, and the PHRA involve the "same legal analysis") (citing cases); *Hanafy v. Hill Int'l, Inc.*, 2023 WL 3010176, at *9 (E.D. Pa. Apr. 19, 2023) (same).

a.  Plaintiff Yazujian

Plaintiffs have not adequately alleged a *prima facie* case of disparate treatment on the basis of race with respect to Plaintiff Yazujian, the one white employee terminated as a result of refusing to obtain the COVID-19 vaccination consistent with Defendant's policy.  Given that she is white, Plaintiff Yazujian in effect brings a claim of reverse race discrimination, which requires the same *prima facie* elements *supra*, *see Reganick v. Sw. Veterans' Ctr.*, 2008 WL 768423, at *4 n.5 (W.D. Pa. Mar. 20, 2008), with the slight twist that, rather than showing membership in a protected minority, she "must instead address the first prong by presenting sufficient evidence 'to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII.'"  *Bond v. City of Bethlehem*, 505 F. App'x 163, 166 (3d Cir. 2012) (quoting *Iadimarco v. Runyon*, 190 F.3d 151, 161 (3d Cir. 1999)).

Yazujian has failed to allege sufficient well-pleaded facts to raise an inference that that she faced adverse action on the basis of intentional discrimination with respect to race.  While she alleges that she was fired by Defendant "to try to cover up that [Defendant] was engaging in race discrimination in intentionally creating a policy that resulted in firing employees the overwhelming majority of whom were Black," she fails to allege facts supporting this conclusory statement sufficient to create an inference of discrimination surrounding her termination.  To the contrary, the sum of Plaintiffs' allegations tends to support, if anything, that Yazujian was fired because she, like the other Plaintiffs, refused to obtain the COVID-19 vaccination contrary to Defendant's policy.

Accordingly, Plaintiff Yazujian has failed to support her claims for disparate treatment on

the basis of race and such claims shall be dismissed without prejudice.

          b.   <u>Plaintiffs Righteous, Lee, Jones, Holland, and Dunson</u>

Defendant does not dispute that the five black Plaintiffs are members of a protected class, were qualified for their positions, and suffered an adverse employment action in the form of their termination. Accordingly, the issue here is whether the black Plaintiffs have adequately alleged the fourth element, whether an adverse action occurred under circumstances giving rise to an inference of intentional discrimination.

While the black Plaintiffs' termination is an adverse action, *see Foster v. Kennedy Univ. Hosp., Inc.*, 2022 WL 2981156, at *5 (D.N.J. July 28, 2022) (listing cases), there are no facts alleged supporting that the termination itself occurred under circumstances giving rise to an inference of intentional discrimination. Quite the opposite, the allegations of the Complaint are that the termination was the result of Defendant's facially neutral COVID-19 vaccination policy.[4]

That being said, the five black Plaintiffs allege that, following their termination, Defendant opposed or did not assist them in obtaining unemployment compensation while Defendant "did not oppose or otherwise obstruct the successful application for unemployment compensation by Ms. Yazujian, who is white." Additionally, they allege that Defendant "did not provide the Black Plaintiffs the bonus or any portion of the bonus they expected to receive" but "did provide this bonus or portion of this bonus to Ms. Yazujian, who is white."

These allegations support an inference of intentional discrimination with respect to these actions. Moreover, Defendant does not challenge on this motion to dismiss that these alleged

---

[4] While the five black Plaintiffs contend that the policy had a discriminatory impact on them, that issue is properly dealt with under a disparate impact framework, as discussed *infra*.

actions can constitute adverse employment actions.[5]

Accordingly, the disparate treatment claims for race discrimination brought by the five black Plaintiffs do not warrant dismissal at this stage.

### ii.    *Disparate Impact*[6]

The five black Plaintiffs next advance a disparate impact theory of discrimination, arguing that Defendant adopted a vaccination policy that resulted in the discriminatory termination of the five black Plaintiffs.[7]

"Title VII's disparate-impact provision prohibits employment practices that have the unintentional effect of discriminating based on race." *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011); *see* 42 U.S.C. § 2000e–2(k)(1)(A)(i); *Lewis v. City of Chicago*, 560 U.S. 205, 208 (2010); *Ricci v. DeStefano*, 557 U.S. 557, 577-78 (2009).

"A disparate impact violation arises when an employer is shown to have used a specific employment practice, neutral on its face, but causing a substantial adverse impact on a protected group and which cannot be justified as serving a legitimate business goal of the employer."

---

[5] Some courts have found that an employer's post-termination conduct can in some instances constitute an adverse employment action, including where the employer opposes the employee's obtaining unemployment benefits. *See Alesi v. Care Providers Ins. Servs., LLC*, 2021 WL 4132296, at *4 (E.D. Pa. Sept. 10, 2021) (citing *Roe v. McKee Mgmt. Assocs., Inc*, 2017 WL 690538, at *8 (E.D. Pa. Feb. 21, 2017)); *see also Petrunich v. Sun Bldg. Sys., Inc.*, 2006 WL 2788208, at *8 (M.D. Pa. Sept. 26, 2006); *Grace v. Starwood Hotels & Resorts Worldwide, Inc.*, 2008 WL 437027, at *6 (W.D. Pa. Feb. 14, 2008). That being said, there is some debate among lower courts in this jurisdiction on the issue. *See, e.g., Adamchik v. Compservices, Inc.*, 2010 WL 5139076, at *1 (W.D. Pa. Dec. 9, 2010) (describing the "disagreement among the courts regarding whether an employer's opposition to unemployment benefits may constitute an 'adverse employment action'"). Similarly, while the failure to award a bonus may constitute an adverse action, there is disagreement among courts about when this is the case, and the Third Circuit has not "squarely addressed" the issue. *See Uchin v. Condo Roccia Koptiw, LLP*, 2019 WL 2387088, at *2 n.2 (E.D. Pa. June 4, 2019) (describing differing approaches among courts as to when the denial of a bonus constitutes an adverse employment action).

[6] A disparate impact claim is not available under Section 1981, so Plaintiffs may proceed only under Title VII and the PHRA with respect to their disparate impact claim. *Castleberry v. STI Grp.*, 863 F.3d 259, 267 (3d Cir. 2017).

[7] While Plaintiffs' briefing does not always clearly distinguish between the different Plaintiffs, they make no argument that their disparate impact claim extends to Plaintiff Yazujian, for which reason the Court will treat the claim as being brought only by the five black Plaintiffs.

*Crawford v. Verizon Pennsylvania, Inc.*, 103 F. Supp.3d 597, 606 (E.D. Pa. 2015) (citing

*E.E.O.C. v. Metal Service Co.*, 892 F.2d 341, 346 (3d Cir. 1990)).  Accordingly, "[t]o establish a

*prima facie* disparate impact claim under Title VII, the plaintiff must demonstrate that the

application of a facially neutral standard caused a significantly discriminatory pattern." *Rauceo*

*v. Philadelphia Gas Works*, 2020 WL 550613, at *2 (E.D. Pa. Feb. 3, 2020) (citing *N. Hudson*

*Reg'l Fire & Rescue*, 665 F.3d at 476-77).  A disparate impact claim does not require evidence

of an employer's subjective intent to discriminate.  *Lehenky v. Toshiba Am. Energy Sys. Corp.*,

2023 WL 3562981, at *3 (3d Cir. May 19, 2023).  Here, there is no dispute that Defendant's

vaccination policy was facially neutral.

The five black Plaintiffs have alleged sufficient facts to support a disparate impact claim

at this stage.  Specifically, they allege that Defendant adopted a policy that had a

disproportionate impact on them because of the prevalence of "vaccine hesitancy" among

African Americans.  They further allege that while 36% of Defendant's workforce was black at

the relevant time, the five black employees terminated pursuant to the vaccine policy constituted

83% of the workers terminated (*i.e.*, 5/6 of the employees terminated for failing to obtain the

vaccine).

While Defendant argues that Plaintiffs' statistical evidence is too thin to support a case of

disparate impact discrimination, Plaintiffs have, at the pleading stage, alleged sufficient facts to

allow for further discovery on this fact-intensive issue.  *See, e.g.*, *Rauceo*, 2020 WL 550613, at

*2 ("To survive dismissal, all [the plaintiff] must do is plead facts sufficient to allege that a

facially neutral policy or practice's adverse effects fall disproportionately on a group protected

by Title VII . . . to which he belongs."); *Ladd v. Boeing Co.*, 463 F. Supp.2d 516, 523 (E.D. Pa.

2006) (similar); *United States v. Pennsylvania*, 110 F. Supp.3d 544, 553 (M.D. Pa. 2015)

13

(similar); *Bartell v. Cmty. Coll. of Philadelphia*, 2021 WL 1561912, at *6 n.6 (E.D. Pa. Apr. 21, 2021) (noting cases denying motions to dismiss disparate impact claims where plaintiffs alleged that a facially neutral policy adversely impacted a protected class of employees).

### C.  Disability Discrimination (ADA and the PHRA)

Plaintiffs argue that their termination was based on Defendant's perception of them as being "disabled with COVID-19" and as "permanently imminently likely to infect coworkers and students because they were 'unvaccinated.'"  In other words, Plaintiffs argue they were perceived as being disabled by the Defendant because they did not receive the COVID-19 vaccine.

To state a *prima facie* case of disability discrimination, "a plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination."  *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010).  The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual;" "a record of such an impairment"; or "being regarded as having such an impairment[.]"  42 U.S.C. § 12102(1).  Since its amendment in 2008, the ADA has specified that an individual is "regarded as" disabled when "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A); *see Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 48 (3d Cir. 2017).

Plaintiffs rest their argument on the "regarded as" definition of disability, contending that Defendant regarded them as having a disability under the meaning of the ADA because

Defendant required them to receive the COVID-19 vaccination before they could return to work—"Defendant regarded and treated the Plaintiffs as if they were inherently unhealthy, disabled, permanently sick and contagious with COVID-19" (emphasis omitted).

In focusing on establishing how Defendant perceived their alleged disability, Plaintiffs put the cart before the horse and neglect to explain, as a predicate matter, how their vaccination status constitutes a "physical or mental impairment" under the meaning of the ADA.  The routine dismissal of disability discrimination claims predicated on the employer's awareness of the employee's COVID-19 vaccination status, where the employee has failed to demonstrate that his unvaccinated status constitutes an impairment, is, in the view of this Court, the correct course of action under these circumstances.  *See, e.g.*, *Jorgenson v. Conduent Transp. Sols., Inc.*, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023), *aff'd*, 2023 WL 4105705 (4th Cir. June 21, 2023) (dismissing ADA claim after determining that the employee's "vaccination status is . . . not an impairment[.]"); *Sharikov v. Philips Med. Sys. MR, Inc.*, 2023 WL 2390360, at *7-8 (N.D.N.Y. Mar. 7, 2023) ("The allegation that Defendant perceived Plaintiff as potentially infectious fails to plausibly allege a claim that the that Defendant regarded Plaintiff as having an impairment.") (listing cases where courts have dismissed claims that employees subject to COVID-19 vaccination policies were regarded as having an impairment); *see also Shklyar v. Carboline Co.*, 616 F. Supp.3d 920, 926 (E.D. Mo. 2022), *aff'd*, 2023 WL 1487782 (8th Cir. Feb. 3, 2023) (imposing generally applicable COVID-19 vaccination requirement did not support that employer regarded employee as being disabled under the ADA); *Shane v. Bio-Techne Corp.*, 2023 WL 3936638, at *7-8 (D. Minn. June 9, 2023) (dismissing ADA claim with prejudice where employee failed to explain how his COVID-19 vaccination status constituted an impairment).

Because Plaintiffs do not demonstrate that their COVID-19 vaccination status qualifies as a disability under the ADA, their disability discrimination claims must be dismissed.

### D.  Retaliation

Plaintiffs also advance a theory of retaliation with respect to their religion, race, and disability claims.[8]  Notably, a plaintiff "'need not prove the merits of the underlying discrimination complaint' in order to seek redress" via a retaliation claim.  *Moore v. City of Philadelphia*, 461 F.3d 331, 344 (3d Cir. 2006), *as amended* (Sept. 13, 2006) (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996)).  Instead, an employee need only act "under a good faith, reasonable belief that a violation existed."  *Aman*, 85 F.3d at 1085 (citation omitted); *Moore*, 461 F.3d at 344.

Title VII prohibits an employer retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  A *prima facie* case for retaliation requires a showing of "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  *Mathis v. Christian Heating & Air Conditioning, Inc.*, 158 F. Supp.3d 317, 333-34 (E.D. Pa. 2016) (quoting *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015)).

"With respect to 'protected activity,' the anti-retaliation provision of Title VII protects

---

[8] Retaliation claims are cognizable under Title VII, Section 1981, the ADA, and the PHRA.  *See, e.g.*, *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022); *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002).  And the *prima facie* elements for retaliation claims brought under each of these statutes are the same.  *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp.3d 115, 139 (E.D. Pa. 2020); *see Smith v. ABF Freight Sys., Inc.*, 2007 WL 3231969, at *10 n.17 (M.D. Pa. Oct. 29, 2007) (citing *Fogleman*, 283 F.3d at 567-68).

those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." *Moore*, 461 F.3d at 341 (citing *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006)). "Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Id.* (citation omitted). As to what qualifies as an "adverse action," the U.S. Supreme Court clarified in *Burlington Northern* that a plaintiff claiming retaliation under Title VII must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation and citation omitted); *see Moore*, 461 F.3d at 341 (discussing *Burlington Northern*). To establish the third element, "a plaintiff must show a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore*, 461 F.3d at 341-42.

Plaintiffs assert that they engaged in four instances of protected activity: (1) applying for a religious accommodation; (2) submitting the letter to HR Director Havens-Dobbs following Defendant's decision to require the Plaintiffs to obtain the vaccine or otherwise be deemed to have voluntarily resigned; (3) engaging in a "belated interactive process" with Defendant wherein they opposed the Defendant's decision and policy; and (4) filing a charge of discrimination with the EEOC.

Defendant challenges only the first ground advanced by Plaintiffs for a protected activity: Plaintiffs' application for a religious accommodation. Merely applying for a religious

accommodation—rather than opposing the allegedly unlawful denial of a religious accommodation—does not constitute protected activity for the purpose of a Title VII retaliation claim. *Blackwell*, 2023 WL 362392, at *9 n.8; *Spratley v. KidsPeace Corp.*, 2023 WL 3007933, at *18 (E.D. Pa. Apr. 19, 2023); *see Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018) (concluding that merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation); *see also Al Refat v. Franklin Fin. Servs. Corp.*, 2021 WL 2588789, at *6 n.6 (M.D. Pa. June 24, 2021) (assuming without deciding that plaintiff's request for religious accommodation constituted protected activity under Title VII where there was no briefing on the issue). Accordingly, Plaintiffs may not rely on merely applying for a religious accommodation as a form of protected activity. They may, however, at least for now, given Defendant's decision to not challenge them, continue to rely on the remaining grounds they assert of protected activity.

The focus of Defendant's argument is on the causal connection between the alleged protected activities and adverse actions. While Defendant fails to individually address each of the alleged protected activities and adverse actions advanced by Plaintiffs, its argument, understood broadly, is that Plaintiffs have failed to allege sufficient facts to create an inference of causation between any protected activity and adverse action.

In response, Plaintiffs offer no specific argument as to how they have demonstrated a causal connection between any protected activity and any adverse action taken by the Defendant. Even when viewing the Complaint in the light most favorable to Plaintiffs, they have failed to sufficiently allege a causal connection between any protected activity and adverse action to create an inference of retaliation. To the contrary, the sum of Plaintiffs' allegations tends to support that the claimed adverse actions were not done in retaliation for any protected activity

but were instead merely actions taken consistent with Defendant's stated vaccination policy.  For instance, Plaintiffs' termination and Defendant's failure to rehire them were the consequences of Plaintiffs' initial and continued failure to follow the vaccination policy, and there are no non-conclusory allegations supporting that either was done in retaliation for any protected activity.

While one potential adverse action, Defendant's alleged interference with the five black Plaintiffs' efforts to obtain unemployment compensation and failure to pay them bonuses they had earned, does not appear to be related to the vaccination policy, Plaintiffs nonetheless fail to plausibly allege that this action was done in retaliation for any protected activity.

Accordingly, Plaintiffs' retaliation claims will be dismissed without prejudice in that they have not plausibly alleged a causal connection between protected activity and adverse employment action.

### E.  Rule 12(f)

Defendant also moves to strike certain portions of Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f).

Rule 12(f) provides in part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  As a general rule, motions to strike are disfavored.  *See Kaetz v. Wolfson*, 2022 WL 4115505, at *1 n.2 (3d Cir. Sept. 9, 2022), *cert. dismissed*, 143 S. Ct. 1012 (2023), *reconsideration denied*, 143 S. Ct. 1744 (2023).  The standard for striking portions of a complaint under Rule 12(f) "is strict and . . . only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken." *Johnson v. Anhorn*, 334 F. Supp.2d 802, 809 (E.D. Pa. 2004) (quoting *Becker v. Chicago Title Ins. Co.*, 2004 WL 228672, at *6 (E.D. Pa. Feb. 4, 2004)); *see also Sizer v. Bennett*, 2018 WL 3439533, at *1 (W.D. Pa. July 17, 2018) ("[S]triking portions of a plaintiff's

pleadings is a drastic remedy[.]").

### i.   Links to Newspaper Articles

Defendant first objects to Plaintiffs' providing the hyperlinks to news articles within the allegations of their Complaint. Defendant argues that the "hyperlinks to news articles . . . are irrelevant and prejudicial." For this reason, Defendant objects to Paragraphs 14-18, contending they should be stricken in their entirety—*i.e.*, hyperlinks and all.

Paragraphs 14-18 include allegations purporting to support that "COVID-19 vaccines don't prevent transmission" of the virus. The allegations include references and weblinks to the U.S. Food and Drug Administration ("FDA") website as well as news articles from sources including the *New York Times* and CNN. The sources linked to in the allegations are not attached as exhibits to the Second Amended Complaint.

While proceeding under Rule 12(f), the substance of Defendant's argument centers on Rule 10(c). Federal Rule of Civil Procedure 10(c) provides, in relevant part: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. *A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes*" (emphasis added). Fed. R. Civ. P. 10(c). Defendants appear to argue—though their briefing is not precisely clear—that the news articles and websites in Paragraphs 14-18 referenced in the hyperlinks should not be incorporated into Plaintiffs' Second Amended Complaint.

Plaintiffs make no argument that the hyperlinked articles should be considered as incorporated within their Second Amended Complaint. On that basis, as well as in consideration of legal authority stating that newspaper articles do not qualify as "written instruments" for purposes of Rule 10(c) incorporation, *see, e.g.*, *Perkins v. Silverstein*, 939 F.2d 463, 467 n.2 (7th

Cir. 1991); *Dichter-Mad Fam. Partners, LLP v. United States*, 707 F. Supp.2d 1016, 1019 (C.D.
Cal. 2010), *aff'd*, 709 F.3d 749 (9th Cir. 2013), the hyperlinked sources in Paragraphs 14-18 will
not be considered as "part of the pleading."

Defendant otherwise does not demonstrate that any portion of Paragraphs 14-18 should
be stricken from the Second Amended Complaint under Rule 12(f).  While stating in conclusory
fashion that the "hyperlinks to news articles . . . are irrelevant and prejudicial," Defendant does
not develop this argument.  Moreover, viewed in the context of the whole Complaint, the
allegations in Paragraphs 14-18 are relevant in that they relate to the Plaintiffs' grounds for
opposing Defendant's vaccination policy, and the allegations do not contain material that is so
scandalous or impertinent as to justify striking them under the high bar set forth by case law
interpreting Rule 12(f).

Accordingly, while the hyperlinked sources will not be considered as incorporated within
Plaintiffs' Complaint, no portion of Paragraphs 14-18 will be stricken.

### ii.    *Settlement Discussions*

Defendant next objects to the Second Amended Complaint's reference to
"correspondence between counsel related to compromise negotiations and . . . characterizations
of [Defendant's] counsel in this case."  Defendant argues that "[s]ince settlement
communications are clearly inadmissible pursuant to Rule 408, the only purpose their inclusion
can possibly serve is to inflame a jury."  On these grounds, Defendant seeks to strike Paragraphs
65-70 of the Complaint.

Paragraphs 65-70 describe how Defendant "retained outside corporate employment
defense counsel" after terminating Plaintiffs; Plaintiffs "attempted to engage [Defendant's
counsel] in a belated interactive process to try to stanch the damage and suffering [Defendant]

had inflicted on them"; Defendant "told the Plaintiffs that they could return to their jobs if they 'got vaccinated'"; Plaintiffs "presented [Defendant's counsel] with additional studies and news stories regarding the obvious and incontrovertible evidence that the vaccines did not prevent or reduce transmission"; "[Defendant's counsel] responded by doubling down on [Defendant's] debunked claim that the vaccines prevented and/or reduced transmission"; "[Defendant's counsel] suggested that Plaintiff's counsel gather materials to submit to try to convince an 'expert,' hired by [Defendant] and paid [for] by [Defendant], that the vaccines did not prevent or even reduce transmission" (emphasis omitted); and "[Defendant's] offer was an empty gesture, a bullying tactic by a powerful entity."

While some courts have stricken allegations in a complaint that would be inadmissible at trial under Federal Rule of Evidence 408, *see, e.g.*, *Providence Town Ctr. LP v. Raymours Furniture Co.*, 2009 WL 3821935, at *5 (E.D. Pa. Nov. 13, 2009) (listing cases), others have declined to do so on the grounds that, as a rule of evidence, Rule 408 "does not govern pleadings," *see, e.g.*, *Steak Umm Co., LLC v. Steak 'Em Up, Inc.*, 2009 WL 3540786, at *3 (E.D. Pa. Oct. 29, 2009); *Mobile Conversions, Inc. v. Allegheny Ford Truck Sales*, 2013 WL 1946183, at *6 (W.D. Pa. May 9, 2013), *order clarified*, 2013 WL 12137796 (W.D. Pa. May 21, 2013); *Goldstein v. Elk Lighting, Inc.*, 2013 WL 790765, at *9 (M.D. Pa. Mar. 4, 2013); *McAndrews L. Offs. v. Sch. Dist. of Philadelphia*, 2007 WL 515412, at *3 (E.D. Pa. Feb. 9, 2007) ("At this stage of the proceedings, the court will not strike pleadings simply because they may not later be admissible at trial.").

Here, it is premature to determine whether Paragraphs 65-70 contain any material that would be inadmissible under Rule 408, and the allegations are not so impertinent or irrelevant as to justify striking them under Rule 12(f).  *See Mobile Conversions*, 2013 WL 1946183, at *6

22

(denying motion to strike premised on Rule 408 as premature where the allegations were not redundant, immaterial, impertinent, or scandalous); *Horse Soldier, LLC v. Tharpe*, 2014 WL 5312823, at *8 (M.D. Pa. Oct. 17, 2014) (similar).  In the light most favorable to Plaintiffs, the allegations are relevant to their employment discrimination claims because they relate to Defendant's actions following Plaintiffs' requests for accommodation and subsequent termination.

An appropriate order follows.

**BY THE COURT:**


**/S/Wendy Beetlestone, J.**


_____

**WENDY BEETLESTONE, J.**